Fletcher *et al. v.* Waring *et al.*

Filed Mar. 13, 1894.

---◆---

No. 15,425.

## FLETCHER ET AL. *v.* WARING ET AL.

CONTRACT.—*Railroad.*—*Receiver's Certificates.*—*Agreement to Postpone Certificates to Those of Another.*—*Scope of Agreement.*—*Breach of.*— Fletcher & Co. purchased of the receiver of the Illinois Midland Railway receiver's certificates. The receiver was, at the time of the sale of the certificates to Fletcher & Co., the agent of Waring Brothers, who held large amounts of the stock and bonds of the Midland Railway, and also large claims against the same, and the receiver, as such agent, made certain representations in relation to certain species of property connected with such railway, which property was then held by Waring Brothers. Waring Brothers, who, at the time of the sale of the certificates to Fletcher & Co., held receiver's certificates for the use of certain rolling stock purchased for said road from them, entered into an agreement with Fletcher & Co.,

137  159
138  660

137  159
140  211
140  298

137  159
145  268

137  159
151  406
152  623

137  159
161  587

that the certificates owned by them shall be postponed and subordinated to said certificates to be issued by the receiver to Fletcher & Co. Fletcher & Co. bring suit to recover from Waring Brothers the balance left due on their certificates after the distribution of the assets of the Midland Railway.

*Held,* that Fletcher & Co. could not, from such facts, at the time of the purchase of their certificates, have understood that Waring Brothers' certificates or rolling stock were in any manner pledged to them.

*Held,* also, that Waring Brothers' contract, by which they agreed that their certificates should be postponed to those of Fletcher & Co., was not in any manner violated.

SAME.—*Lien.— Waiver.— Receiver's Certificates.—Postponement.—Railroad.*—Where the court, in selling the railroad, found that certain parts of the right of way had been sold by Waring Brothers to the Midland Railway, for which they had not been paid, which parts were sold with the road, and Waring Brothers paid therefor out of the proceeds, for such parts of the right of way, Fletcher & Co. were entitled to a judgment against Waring Brothers for the amount so paid to the latter for their liens for right of way, by virtue of a contract whereby Waring Brothers waived their claims for first lien for right of way, and agreed that such claims for right of way should be postponed to the certificates to be sold to Fletcher & Co. by the receiver.

SAME.—*Scope of Agreement.— Lien.— Postponement.—Railroad.*—The agreement above referred to, to waive claim for first lien for right of way, and to postpone the same in favor of Fletcher & Co., does not extend to parts of the right of way held by Waring Brothers as absolute owners.

SUPREME COURT PRACTICE.—*Overruling Motion for New Trial.—Exception.*—Where no exception has been taken to the overruling of the motion for a new trial, no question relating thereto can be presented on appeal.

From the Vigo Superior Court.

*A. C. Harris, J. T. Dye* and *W. P. Fishback,* for appellants.

*H. S. Green,* —— *Humphrey, A. F. McNutt, S. B. Davis, S. C. Davis, C. McNutt, J. G. McNutt* and *J. C. Robinson,* for appellees.

HOWARD, C. J.—It will be convenient to refer to ap-

pellants as Fletcher & Co., and to appellees as Waring Brothers.

The Illinois Midland Railway was a corporation formed by a consolidation of the Peoria, Atlanta and Decatur, the Paris and Decatur, and the Paris and Terre Haute Railroads. Proceedings to foreclose mortgages and liens on the Illinois Midland, and the roads of which it was composed, were begun in the circuit court of Edgar county, Illinois, in 1875, and a receiver was appointed. These proceedings were, in 1878, removed to the United States Circuit Court for the southern district of Illinois, and there consolidated with other cases involving the same subject-matter. In December, 1878, L. Genis was appointed receiver of these roads.

On June 29, 1881, receiver Genis petitioned for leave to issue receiver's certificates to pay for necessary betterments then already made. The court, by order entered the same day, authorized the receiver to issue such certificates to the amount of $63,037.98. On the same day, the receiver also petitioned for leave to issue certificates to make future betterments, necessary to the preservation and maintenance of the property. The court authorized the issue of $80,000 in certificates for this purpose. The receiver sold to Fletcher & Co., of Indianapolis, the certificates issued under the first order just mentioned, and $58,275 of the certificates authorized under the second order. By an order entered August 16, 1881, the court approved these sales of certificates.

The Illinois Midland and the roads of which it was composed were sold in 1886, under said foreclosure proceedings in the United States Circuit Court, and the proceeds distributed to the creditors by the commissioner appointed for that purpose. The share of these proceeds

paid to Fletcher & Co., on account of their certificates, was less than the amount due on the same.

At the time Fletcher & Co. purchased the certificates from the receiver, the Waring Brothers, of London, England, held large amounts of the stock and bonds of, also large claims against, the Midland Railway and the roads of which it was composed, and were greatly interested in the successful maintenance, management and operation of these roads.    Mr. Genis, the receiver, was also the local agent of Waring Brothers.

Fletcher & Co. filed their complaint in the court below, in seven paragraphs, to recover from Waring Brothers the balance left due on their certificates after the distribution of the assets of the Midland.   The first and third paragraphs of the complaint were afterwards withdrawn, and the court sustained a demurrer to the seventh paragraph, to which ruling exception was made.   Waring Brothers answered the remaining paragraphs of the complaint by general denials and by pleas of *non est factum*.   The fifth paragraph of answer averred that Fletcher & Co. had full knowledge of certain facts alleged in the complaint to have been misrepresented.   Fletcher & Co. replied in general denial, and also by special plea to the fifth paragraph of the answer.

Upon the issues so formed, the cause was tried without a jury, and upon the evidence the court found for Fletcher & Co. upon the sixth paragraph of the complaint, and for Waring Brothers upon the remaining paragraphs.

The reason given in the complaint for holding Waring Brothers liable for the unpaid balance due them was that at the time Fletcher & Co. purchased from the receiver the certificates in question, certain representations were made to them by Genis as agent of Waring Brothers on the faith of which representations such purchase was made.   These representations have reference to two spe-

cies of property connected with the Midland Railway, which properties were then held by Waring Brothers:

First. Certain receiver's certificates issued to Waring Brothers prior to June, 1881, for cars and other like property furnished to the railway by Waring Brothers, and which certificates it was agreed should be postponed to the certificates which were to be purchased by Fletcher & Co., and

Second. Certain claims for right of way held by or for Waring Brothers, which it was also agreed should be postponed to the certificates to be purchased by Fletcher & Co.

The agreement as to the certificates was as follows: "The parties of the first part to said contract (Waring Brothers) hereby agree that the certificates owned by them and specified in Exhibit A, attached and made a part of said contract, shall be and the same are hereby postponed and subordinated to said certificates so to be issued by said L. Genis, as receiver, in said decree of June 29, 1881, and to be sold by said receiver to the parties of the second part (Fletcher & Co.)."

Waring Brothers contend that this agreement means that, in the event of the sale of the Midland Railway by order of the United States Court, and in case the assets should not be sufficient to pay all the certificates, the certificates of Fletcher & Co. should be paid first, and those of Waring Brothers afterwards.

Fletcher & Co., on the other hand, contend that, under this agreement, Waring Brothers "pledged the certificates as security for our debt"; that the certificates represented the purchase-price of certain rolling stock, and that, by the agreement, such rolling stock was to be sold with the road, and the proceeds go to add to the fund for final distribution.

We think the evidence in the record shows that

Fletcher & Co.. could not, at the time of the purchase of their certificates, have understood that the Waring Brothers' certificates or rolling stock were in any manner pledged to them. There was no transfer of anything to Fletcher & Co.

The record shows that the rolling stock sold to the receiver, and for which Waring Brothers held their certificates, was sold only on condition of payment at certain specified times; and that, in case such payment should not be made, the rolling stock should be returned to Waring Brothers, and a rental therefor should be paid them, and that the cost of repairs should be a debt to them from the road. The cars were, by the agreement, to be conspicuously· marked ''The property of Waring Brothers.''

The record further shows that on January 29, 1881, Waring Brothers filed, in the United States court aforesaid, their petition, in which it was averred that default had been made in the payment of certificates held by them for such rolling stock, and asking for its return to them under the terms of sale. The court made an order for such return, and the leasing of the rolling stock by the receiver. On an accounting by a master of the court, all certificates of purchase held by Waring Brothers were to be returned and canceled, except such as should represent depreciation in value of such rolling stock. The certificates postponed to those sold to Fletcher & Co. represented only the said depreciation in value. At the time Fletcher & Co. purchased their certificates, said order and proceedings of the court were upon record and unchanged. Moreover, before such purchase was made, an attorney representing Fletcher & Co. made personal examination of such court record. In answer to a question, in the court below, said attorney replied: ''It is

unquestionably true that I did go, and I did examine the records before the loan was made.''

Waring Brothers, therefore, insist that Fletcher & Co., at the time they purchased their certificates, knew that the certificates held by Waring Brothers represented only their claim for use of the rolling stock, and that it was this claim that was postponed to the payment of Fletcher & Co.'s certificates. The rolling stock was not sold as a part of the property of the road, for the reason that it did not belong to the road. Neither was anything ever paid to Waring Brothers upon their said certificates.

From this evidence, we are of opinion that the trial court correctly held that Waring Brothers' contract, by which they agreed that their certificates should be postponed to those of Fletcher & Co., was not in any manner violated.

Much of what has been said in relation to the receiver's certificates applies equally to the right of way claims.

The agreement made by Waring Brothers as to right of way, was as follows:

''We hereby waive our claims for a first lien for right of way specified in the foregoing letter, and agree that such claims for right of way shall be postponed to the certificates to be sold to Fletcher & Co. by L. Genis, receiver.''

The United States court, in selling the road, found that certain parts of the right of way had been sold by Waring Brothers to the Midland Railway, for which Waring Brothers had not been paid. These parts of the right of way were sold with the road, and the court ordered that Waring Brothers be paid out of the proceeds for such part of the right of way. The sum so paid Waring Brothers for right of way, the court below held to be in payment of their lien for right of way, and as

such that it should be postponed to the certificates of
Fletcher & Co. A judgment was accordingly rendered
for this amount against Waring Brothers in favor of
Fletcher & Co. This, we think, was strictly correct un-
der the contract of waiver of claim for first lien for right
of way by Waring Brothers, and postponement of such
claim to the claim of Fletcher & Co. on their certificates.

Had the United States court found that all the claims
of Waring Brothers for right of way were also simple
liens upon the property of the road, and, accordingly,
sold all the rights of way and ordered payment to War-
ing Brothers out of the proceeds, undoubtedly a like
course should have been taken in the case at bar in re-
lation to such payments, and they, also, should have
been held as postponed to Fletcher & Co.'s preferred
claims on their certificates. But, on the contrary, the
United States court found that Waring Brothers were
the owners of certain described parts of the right of way
which had never been transferred to the Midland Rail-
way. These parts of the right of way the court refused
to order sold, but held them to be the property of War-
ing Brothers. These strips of land so found to belong
to Waring Brothers had not, in any way, been pledged
to Fletcher & Co. The court found, not that Waring
Brothers had any lien on the road for this property, but
that they were the absolute owners of it. The court be-
low, in the case at bar, accordingly found, and correctly,
as we think, that the property so found to belong to War-
ing Brothers was in no way connected with the agree-
ment to postpone liens in favor of Fletcher & Co.

Were this case, therefore, properly before us on ap-
peal, we should be constrained, from the evidence and
the law, to affirm the judgment of the trial court.

It is, however, contended by the appellees, that the

record shows that the appeal is not well brought, and they have, accordingly, asked for a dismissal.

The error assigned is that "The court erred in overruling the appellants' motion for a new trial."

The final order, from which the appeal was taken, reads:

"Come again the parties, and the court being advised overrules the motion of the plaintiffs for a new trial, and plaintiffs pray an appeal to the Supreme Court, and the court grants said appeal and allows ten days within which to file an appeal-bond, with W. R. McKeen as surety, and fixes the amount of said bond at $75,000. And the court orders that execution on the judgment herein be stayed for ten days, and grants sixty days within which to prepare and file a bill of exceptions."

It appears, thus, that no exception was taken to the overruling of the motion for a new trial; and the overruling of this motion being the only error assigned, appellees insist that there is no question before the court.

The statute, section 638, R. S. 1894 (section 626, R. S. 1881), provides that "the party objecting to the decision must except at the time the decision is made; but time may be given to reduce the exception to writing." This has always been held to be an imperative rule. In Buskirk's Practice, p. 144, it is said: "It is settled that an exception must be taken at the time the decision is made," citing numerous decisions of this court. See also Work's Practice, section 939, and citations. In Elliott's App. Proc. it is said that "there is only one time at which an exception can be effectively taken, and that is at the time the ruling is made." See sections 784, 785, 786 and notes.

The appellants endeavor to argue that the prayer for appeal amounts to an exception. An appeal is taken in order to bring before this court all the rulings of the court

that have been excepted to on the trial. The purpose of the exception is to notify the trial court, at the time the ruling is made, that the question of its correctness will be presented to the Supreme Court. The appeal has not reference simply to the overruling of the motion for a new trial, but to all errors of the court. In this case the appellants excepted to the ruling of the court in sustaining a demurrer to the seventh paragraph of the complaint. Appellants also excepted to a ruling of the court made after the filing of the motion for a new trial, in which the court gave leave to the parties to file additional motions on the first day of the ensuing term. Had the appellants assigned either of these rulings as error, such alleged errors would be properly before us on the appeal. But there was no exception taken by appellants to the overruling of the motion for a new trial. "It must be presumed," then, as said in *Jolly* v. *The Terre Haute, etc., Co.*, 9 Ind. 417, "that they did not intend to rely on that ruling as error, seeing that the opinion of the court overruling" the other motions "is excepted to."

Appeals had been taken to this court in the numerous cases where the omission to make the proper exception was held to be fatal; and we think it was never before argued that such appeals were themselves sufficient to dispense with the exception so imperatively required by the statute.

In *Tyler* v. *Wilkinson*, 10 Ind. 53, it was said: "No exception was taken to the ruling of the court. There is no question before this court, as we have several times decided." See also *Brightwell* v. *McLane*, 11 Ind. 210; *Dickson* v. *Rose*, 87 Ind. 103; *Creager* v. *Langford*, 87 Ind. 177; *Johnson* v. *McCulloch*, 89 Ind. 270; *Coan* v. *Grimes*, 63 Ind. 21; *Sohn* v. *Marion, etc., Gravel Road Co.*, 73 Ind. 77; *Hull* v. *Louth, Guar.*, 109 Ind. 315; 2 Am. & Eng. Enc. Law 221.

Finding no available error in the record, the judgment is affirmed.

Filed March 27, 1894.