## RADLEY *v.* THE STATE OF INDIANA.

[No. 21,671. Filed October 7, 1910. Rehearing denied November 17, 1910.]

1. APPEAL.—*Briefs.*—*Instructions.*—Questioned instructions which are not set out in words or substance in the complaining party's brief, will not be considered.  p. 646.

2. BURGLARY.—*Instructions.*—*Grand Larceny.*—In a prosecution for burglary an instruction defining the crime of grand larceny, is not misleading nor outside the issues.  p. 647.

3. TRIAL.—*Burglary.*—*Misconduct of Prosecuting Attorney.*—*Presenting Question of, on Appeal.*—Misconduct of the prosecuting attorney, in a burglary case, cannot be presented on appeal, where the record shows no objection nor ruling thereon, nor any exception taken, nor a motion to discharge the jury, nor to instruct the jury to disregard the objectionable statement.  p. 647.

4. BURGLARY.—*Ownership of House.*—*Evidence.*—Evidence showing that the prosecuting witness, who was a married man, resided in the house that was entered, is sufficient evidence of ownership to sustain the charge of burglary, proof of any particular title being unnecessary.  p. 648.

5. BURGLARY.—*Evidence.*—*Identification.*—*Entry.* — Evidence that defendant was seen near the home of the prosecuting witness and recognized by two witnesses who afterwards identified him, that he went to the rear of the house, that he emerged twenty minutes later with a bundle under his arm, that he sold the goods at a pawn shop in a neighboring city, that he offered no explanation of his possession, and that he was acquainted with the servant girl of the prosecuting witness, sufficiently identifies defendant as the offender, and shows that he entered the house.  p. 648.

From Floyd Circuit Court; *Harry C. Montgomery*, Special Judge.

Prosecution by The State of Indiana against Charles Radley. From a judgment of conviction, defendant appeals. *Affirmed.*

*H. W. Phipps,* for appellant.

*James Bingham,* Attorney-General, *W. H. Thompson, A. G. Cavins* and *E. M. White,* for the State.

JORDAN, J.—Appellant was indicted by the grand jury of Floyd county, under §2264 Burns 1908, Acts 1907 p. 249, §1, for committing the crime of burglary in said county on July 5, 1909, by breaking into and entering, in the daytime, the dwelling-house of William E. Janes, then and there situated in said county. His plea was "not guilty." There was a trial by jury, and verdict returned finding him guilty as charged in the indictment, and that his age was twenty-six years. Over his motion for a new trial the court rendered judgment on the verdict, that he be imprisoned in the Indiana Reformatory for the indefinite term of not less than ten nor more than twenty years, and that he be disfranchised, etc. From this judgment he appeals, and assigns that the court erred in overruling his motion for a new trial. The errors upon which he relies for reversal of the judgment relate to (1) giving and refusing to give certain instructions; (2) insufficiency of the evidence to support the verdict, and (3) improper conduct of the prosecuting attorney in offering to prove certain facts.

Appellant's counsel contends that the trial court erred in giving instructions two, seven, eight, nine and eleven, and in refusing to give instruction one at the request of appellant. The Attorney-General, however, raises the point that no instruction about which appellant complains is set out in his brief, either in full or in substance, as required by rule twenty-two of this court, and therefore no question in relation thereto is presented for review. With the exception of instructions two, seven

and eleven, criticised by appellant's counsel, the contention of the Attorney-General is true. The rule is well settled by repeated decisions of this court, that where appellant's brief fails to set out in full or in substance the instructions about which he complains, no question in regard thereto is presented. *Henderson* v. *Henderson* (1906), 165 Ind. 666, and authorities cited; *Myers* v. *State* (1909), 171 Ind. 673.

The argument by appellant, that instruction two, given to the jury at the request of the State, was misleading and outside of the issues, is not sustained. This charge

2. merely embraced a statement of the crime of grand larceny, as defined by the statute. It was both pertinent to the issues and the evidence in the cause. Instructions seven and eleven contain correct statements of the law pertaining to the crime charged against appellant, and are applicable to the evidence in the case.

Appellant endeavors to base error on the alleged misconduct of the prosecuting attorney in making an offer to prove certain facts, but this alleged error is not avail-

3. able, for the reason that it is not shown by the record that he objected to the act of the prosecuting attorney, that the court made any ruling thereon, or that appellant reserved at the time any exceptions whatever to the matter in question. It does not appear that appellant made any request that the court discharge the jury from further consideration of the cause, or that they be instructed by the court to disregard the statement made by the prosecuting attorney. It is well settled that an exception to the decision of the court must be reserved at the time the ruling is made. *Fletcher* v. *Waring* (1894), 137 Ind. 159; *Johnson* v. *Eberhart* (1895), 140 Ind. 210; *State* v. *Friedley* (1898), 151 Ind. 404; Elliott, App. Proc. §§784-786. It is contended by appellant's counsel that the evidence is insufficient in three particulars to sustain the judgment of the lower court: (1) That the ownership of the house alleged to have been entered is not established. (2) That

the evidence does not identify appellant as the person who entered the house in question. (3) That the evidence is not sufficient to show that there was any breaking and entry of the house by appellant.

The crime is shown to have been committed in the afternoon of July 5, 1909, and that the house in question was situated in the city of New Albany, Floyd county, Indiana. The indictment charged that it was the dwelling-house of William E. Janes. The evidence discloses that Janes, together with his wife and two children, had occupied the house for three years as a residence, and had the exclusive possession thereof. When testifying as a witness, Janes referred to the house as his house. He was asked in what county and state his house was situated —meaning the house in question—to which interrogation he replied: "Floyd county, Indiana." All through his testimony he claimed to be the owner of the house, and no question was raised or objections made by appellant during the trial that Janes was not the owner thereof. Whether he held title thereto in fee, or merely as a tenant, is not fully shown by the evidence. It was sufficient, however, on the trial, in order to establish the charge in the indictment that the house was the dwelling-house of William E. Janes, to show that the latter had the lawful possession thereof at the time the offense of burglary was committed. As against appellant, it was not essential to show what particular title he held to the premises in controversy. §2061 Burns 1908, Acts 1905 p. 584, §190; McCrillis v. State (1879), 69 Ind. 159; 1 Wharton, Crim. Law (10th ed.) §804 and authorities cited; Kennedy v. State (1882), 81 Ind. 379.

The evidence in the case fully establishes that on the afternoon of July 5, 1909, Janes and his family were absent from home. They were at Silver Hills, a place near the city of New Albany. They left home about 3 o'clock in the afternoon of that day. All the doors

and windows of the house were securely fastened before
they left.   The front door was locked with the night-lock
and the back door of the kitchen with an ordinary lock.
They returned home after dark on that day, unlocked the
door and entered the house, but made no examination, and
did not discover that their home had been entered or that
any of their property had been stolen.   On the next morn-
ing, upon information which Janes received from a neighbor,
he made a search of the house, and discovered that thirty-
three pieces of silverware, a pair of opera glasses, two gold
watches and chains, brooches and rings were missing.   The
value of all this property was $300.   At the time the property
was taken it was downstairs in a drawer in one of the dres-
sers, except the jewelry and opera glasses, which were up-
stairs.   Two weeks thereafter Janes recovered the opera
glasses from the detective department of Louisville, Ken-
tucky, and in a short time he recovered the remainder of the
property from the detectives who had received it from the
pawnbroker, who was a witness at the trial.   This pawn-
broker had a shop in the city of Louisville.   The latter tes-
tified that he had become acquainted with appellant on the
5th or 6th day of July, 1909; that defendant brought to
him the jewelry and other property that was stolen from
Janes's home, and that he purchased this property from
defendant; that he purchased the property on two separate
occasions; that at the time he purchased it, defendant and
a man by the name of Tyler came together to his pawn-
shop; that defendant asked him if he wanted to buy the
"stuff" which they had, and he said "Yes," and bought it
and paid for it; that he subsequently turned the property
over to the detective department of the city of Louisville.

Sarah S. Vaser testified, in behalf of the State, that she
lived in the city of New Albany, and that Janes resided on
the opposite side of the street, a short distance east of her
residence; that on the afternoon of July 5, she was sitting
on the porch reading; that she saw a young man come up

the street; that he glanced up and down the street, and kept watching this witness; that he went on the other side of the street, and kept examining the numbers of the houses on that side; that in about five minutes he came down again, passed the Janes home, stopped and looked a moment, but went on down the street; that in about ten or fifteen minutes he returned, with a note-book or piece of paper in his hand, and kept looking at this paper and watching the houses and said witness; that she thought he looked suspicious, and for this reason she watched him; that he went up the street out of sight, and the witness went into the house to answer a telephone call; that as she returned to the porch, the man came down the street, went into the Janes yard and around the house, where he remained for twenty minutes or more, and then came out with a bundle under his right arm; that he did not have a bundle or anything under his arm when he went around to the rear part of the house. This witness positively identified defendant as the man whom she saw on that day go around the house and come out of the yard with a bundle under his arm. She went to the jail in New Albany, after defendant was arrested, and identified him as the man she saw at the Janes house on the occasion in question. She said she could not be mistaken about his being the man.

Elias A. Miller, who resided near the Janes residence, testified that on July 5, 1909, he saw defendant pass his house with a card or note-book in his hand; that defendant was on the street about fifteen minutes, then came back and went past the residence of the witness, and then went towards the Janes residence, but he did not see this person thereafter; that he saw defendant in the jail at New Albany, after he had been arrested, and identified him as the man that went past his house in the direction of the Janes house on July 5.

The State claimed that appellant entered the Janes house by unlocking the back door of the kitchen, and by this

means entered the house. The contention is that he had been supplied with a skeleton key by a domestic, who a short time before the burglary resided with the Janes family, and with whom defendant was familiar, and with whom he frequently communicated during the period that she was working for the Janes family. The evidence in the case tends to sustain this contention of the State.

At no time after appellant was accused of the crime in question did he offer any explanation as to how he came to have possession of the stolen property, which he sold to the pawnbroker in the city of Louisville. The evidence appears to have fully satisfied the jury and the trial court of appellant's guilt, and, considering that which is most favorable to the State, it may be said that it fully establishes the guilt of appellant. *Lee v. State* (1901), 156 Ind. 541.

We find no error in the record, and the judgment is therefore affirmed.