ROBERT McCULLOCH, Appellant, *v.* JOHN DOBSON et al., Respondents.

In an action, tried by a referee, based upon a contract between the parties where the contract is produced in evidence on the trial, it is not necessary for the referee to incorporate it in his report or make separate findings as to all of its provisions or as to what it does or does not contain.

A referee is not required to make findings upon questions of fact which are immaterial, or to pass upon requests to find when the desired findings are substantially incorporated in his report.

The mere fact that a referee fails to note in the margin of the statement of facts submitted to him by a party the manner in which some of the propositions of fact contained therein have been disposed of by him, as required by the Code of Civil Procedure (§ 1023), is not "a refusal to make any finding whatever" within the meaning of said Code (§ 993), and so, does not present an error of law reviewable in this court.

*It seems* that the proper practice in such case is to apply to the court to send the referee's report or the statement back to him to supply the omission.

It is only when it affirmatively appears by the record that the referee has refused to pass upon requests to find, that the refusal is a ruling upon a question of law.

A lease of mill premises, fixtures and appurtenances contained a covenant on the part of the lessees that they would, at their own expense, keep the property in good repair and condition, and at the end of the term surrender it in as good condition as reasonable use and wear thereof would permit; then followed this provision: "It being understood that the said premises shall be in good repair before any entry" by the lessees. In an action by the lessor for an alleged breach of said covenant, *held,* that the provision was in effect a covenant on the part of the lessor to put the premises in good repair before the commencement of the term, the lessees covenanting to keep them in repair thereafter; and it appearing that the lessees entered under an agreement that they should make the repairs stipulated to be made by the lessor, he to pay the expenses incurred, that they were entitled to be allowed as a counter-claim the amount so expended.

Plaintiff offered to prove a conversation between defendants' foreman and a third party as to the condition of the machinery, this was excluded. *Held,* no error.

For the purpose of showing that the machinery was not in good repair at the beginning of the term, defendants were permitted to prove by experts its condition shortly thereafter. *Held,* no error.

In order to show that the machinery was in good repair at the commencement of the term, plaintiff offered in evidence samples of the goods manufactured. These were excluded. *Held,* no error.

Plaintiff also offered proof that the defendants employed incompetent employes. *Held*, that this was properly excluded.

A witness may not be impeached by proof of declarations made by him out of court, after his examination, contradictory of his testimony, without first interrogating him in regard thereto.

A motion to set aside a referee's report on the ground that his mind was so impaired before the making of the report as to render him incompetent to perform the duties of a referee, is addressed to the discretion of the court below, and its determination thereof is not reviewable here.

An order granting an extra allowance on the ground that the case was difficult and extraordinary is within the discretion of the court below, and is not reviewable here.

(Argued March 22, 1892; decided April 12, 1892.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 9, 1891, which affirmed a judgment in favor of defendants.entered upon the report of a referee, an order of Special Term denying a motion by plaintiff to set aside said report, and also an order granting an extra allowance.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Benno Loewy* for appellant. A covenant in a lease requiring a lessee to surrender in as good a condition as reasonable use would permit, does not relieve him from the other covenant to keep and maintain in good repair. (*Lockrow* v. *Horgan*, 58 N. Y. 635; *Myers* v. *Burns*, 35 id. 269; *Ward* v. *Kelsey*, 38 id. 80; *McMann* v. *Autenreith*, 17 Hun, 163; *Redfield* v. *Redfield*, 110 N. Y. 671; *Bonnell* v. *Griswold*, 89 id. 122.) The covenant of the defendant was not to keep and maintain in as good repair as they found it, but "to keep and maintain the said mill, shed and blacksmith shop, internally and externally, and the machinery, shafting, belting, etc., in good condition and repair at their own expense." This covenant would ordinarily oblige the covenantee to put the premises in repair in case they were out of repair at the commencement of their term. (*Myers* v. *Burns*, 35 N. Y. 269; Mayne on Dam. 133; *Payne* v. *Haynes*, 16 M. & W. 541;

*Ward* v. *Kelsey*, 38 N. Y. 80; *Green* v. *Eden*, 2 T. & C. 582.) Because of this failure on the part of the referee to pass upon material findings proposed by the plaintiff, his report should have been set aside. (Code Civ. Pro. §§ 993, 1023; *Potter* v. *Carpenter*, 71 N. Y. 74; *James* v. *Cowing*, 82 id. 449; *Callanan* v. *Gilman*, 107 id. 372; *In re Mellen*, 56 Hun, 553; *Gormley* v. *McGlynn*, 84 N. Y. 284; *Masterson* v. *Cranitch*, 66 How. Pr. 171.) Neither court, jury nor referee has a right to disregard the testimony of unimpeached witnesses. (*Lomer* v. *Meeker*, 25 N. Y. 361; *Arms* v. *Arms*, 13 N. Y. S. R. 196; *Kelly* v. *Burroughs*, 102 N. Y. 93; *Wallace* v. *Berdell*, 97 id. 13; *Moran* v. *McLarty*, 75 id. 25; *Elwood* v. *W. U. T. Co.*, 45 id. 549.) The referee committed error in the admission and rejection of evidence. (*Miles* v. *Sackett*, 30 Hun, 68; 1 Greenl. on Ev. [12th ed.] § 546; *People* v. *Penhollow*, 42 Hun, 105.) The order granting defendants an extra allowance of $500 should be reversed. (Code Civ. Pro. § 3253.)

*George L. Carlisle* for respondents. The court will not interfere with the report of a referee on a question of fact unless the clear weight of evidence shows that he has erred. (Edwards on Ref. 14; *Watson* v. *Campbell*, 28 Barb. 421; *Hill* v. *Grant*, 46 N. Y. 496; *Morgan* v. *Mulligan*, 50 id. 665; *Caswell* v. *Davis*, 58 id. 223; *E. C. F. Co.* v. *Hersee*, 103 id. 25; *Waugh* v. *S. Bank*, 115 id. 42.) The promise to repair was part of the consideration held out to Dobson, which induced him to sign the lease, and is, therefore, binding, if only for this reason alone. (Abb. Tr. Ev. 524, § 4; *Remington* v. *Palmer*, 62 N. Y. 33; *Toniton* v. *Hemingway*, 83 id. 610; *Goodrich* v. *Weston*, 102 Mass. 362.) If a doubt arise between a lessor and lessee as to the construction of a lease, the lease must be construed most beneficially for the lessee. (*Dunn* v. *Spurrier*, 3 B. & P. 399, 403; *Marvin* v. *Stone*, 2 Cow. 781; *Mayor, etc.*, 17 J. & S. 409; *Ripley* v. *Larmouth*, 56 Barb. 21; *Hinneman* v. *Rosenbeck*, 39 N. Y. 101; *Clark* v. *Woodruff*, 83 id. 518; *Grierson* v. *Mason*, 60 id. 394; *Blos-*

*som* v. *Griffin*, 13 id. 569; *Springsteen* v. *Sampson*, 32 id. 703; *Pollen* v. *Leroy*, 30 id. 549; *Griffith* v. *Hardenburgh*, 41 id. 464; *More* v. *Meacham*, 10 id. 211; *French* v. *Carhart*, 1 id. 96; *Fish* v. *Hubbard*, 21 Wend. 663.) "Wear and tear" excepted in a lease is not restricted to a gradual deterioration, but will extend to any accident caused by a defect in the structure. (McAdam on Land. & Ten. 147, 459; *Hess* v. *Newcomer*, 7 Ind. 325; Sedg. on Dam. [6th ed.] 230.) The lease of the machinery, being a bailment, for the mutual benefit of the parties, if ordinary care of same was taken by the Dobsons, they have discharged their liability as bailees. (1 E. D. Smith, 36–271.) Upon the breach of a covenant of a lessor to repair, the lessee has the option to make the repairs and recover the expenses from the landlord, or to sue for damages. (*Hexter* v. *Knox*, 7 J. & S. 109; 63 N. Y. 561; *Myers* v. *Burns*, 35 id. 269; *Cook* v. *Soule*, 56 id. 420; *Witty* v. *Knox*, 63 id. 561; *Witty* v. *Matthews*, 52 id. 512.) Where conflicting evidence really leaves the referee's mind in doubt, his duty is to find the facts adversely to the party holding the affirmative. (*Bradley* v. *McLoughlin*, 8 Hun, 545; *Strong* v. *Place*, 4 Robt. 385.) Though the referee had not died, the courts would have discouraged the return of his report for further findings on any account. (*Moran* v. *Lydecker*, 34 Hun, 582; *F. N. Bank* v. *Levy*, 41 id. 461; *Viele* v. *T. & B. R. R. Co.*, 20 N. Y. 284; *Julian* v. *Grant*, 34 How. Pr. 132; Code Civ. Pro. § 1023.) The courts will sustain the referee's report whenever it is possible; the burden of proof is on the appellant, and that construction most favorable to the respondent will be taken in order to uphold the judgment. (*Gardiner* v. *Schwab*, 34 Hun, 580; *F. N. Bank* v. *Levy*, 41 id. 461; *Hill* v. *Grant*, 46 N. Y. 496; *Morgan* v. *Mulligan*, 50 id. 665; *Caswell* v. *Davis*, 58 id. 223; *E. C. F. Co.* v. *Hersee*, 103 id. 25; *Redfield* v. *Redfield*, 110 id. 673; *Waugh* v. *S. Bank*, 115 id. 42; *Cagger* v. *Lansing*, 64 id. 417.) A referee is not required to state the steps or mental processes leading him to a conclusion of fact. It is sufficient that he state the conclusion itself. (*Potter* v. *Carpenter*, 71

N. Y. 54; *Avery* v. *Foley*, 4 Hun, 415; *Wilson* v. *Knapp*, 42 Super. Ct. 25; *Dolan* v. *Merritt*, 18 Hun, 27; *Van Slyke* v. *Hyatt*, 46 N. Y. 263; 3 Waite's Pr. 307.) A referee is required to find only facts sufficient to sustain his conclusions. (*Dolan* v. *Merritt*, 18 Hun, 27; *Quincy* v. *Young*, 53 N. Y. 504; *Nelson* v. *Ingersoll*, 27 How. Pr. 1; *Viele* v. *T. & B. R. R. Co.*, 20 N. Y. 184; *Van Slyke* v. *Hyatt*, 46 id. 259; *Sermont* v. *Baetjer*, 49 Barb. 362; *McAndrew* v. *Whitlock*, 2 Sweeney, 623.) The facts upon which appellant desires additional findings "must be so incontrovertibly proved as to make the refusal error of law," otherwise such refusal is not good ground for exception. (*Putnam* v. *Furnan*, 71 N. Y. 590; *Stevens* v. *Mayor*, 84 id. 307.) It is not the duty of a referee to pass upon all the proposed findings submitted to him, but only upon those which are material and essential to the determination of the issue. The most that can be claimed as to those requests which are not passed upon is that they are deemed to be "not found" or else to have been considered immaterial by the referee. (*James* v. *Burshell*, 7 Daly, 531; *Breswell* v. *Lincks*, 8 id. 518; *Manley* v. *N. A. Ins. Co.*, 1 Lans. 20; *Quincy* v. *Young*, 53 N. Y. 504; *Morgan* v. *Mulligan*, 50 id. 665; *Stillwell* v. *M. L. Ins. Co.*, 72 id. 385; *Quincy* v. *White*, 63 id. 370.) An appellant, who moves to set aside a report on ground that there are not sufficient findings, must show conclusively not only that the proposed additional findings are material and essential, but, also, that they are decisive and that they would "if found in his favor necessarily alter the judgment." (*Tallman* v. *Bresler*, 58 N. Y. 123; *McDougall* v. *Hess*, 68 id. 620; *Sniffen* v. *Koechling*, 13 J. & S. 61; *Stewart* v. *Morss*, 79 N. Y. 629; *Quincy* v. *White*, 63 id. 370; *Stevens* v. *Mayor*, etc., 84 id. 296; *Baldwin* v. *Doying*, 114 id. 452; *Budlong* v. *Lewis*, 25 Hun, 66.) Appellant was not prejudiced by the referee's refusal to find upon matters of fact. His exceptions to the referee's conclusions of law bring the whole case up for review. (*Roe* v. *Roe*, 14 Hun, 612; *Dolan* v. *Merritt*, 18 id. 27; 3 Wait's Pr. 223.)

But an omission so to do (to find upon all requests) does not affect the validity of the decision. (Code Civ. Pro. § 1023; *Farley* v. *Carpenter*, 27 Hun, 359; *Potter* v. *Carpenter*, 71 N. Y. 74; *Harris* v. *Van Wart*, 96 id. 642.)

O'Brien, J. The plaintiff's action was for the recovery of damages for the breach, by the defendants, of the covenants of a lease of a silk mill and machinery, executed and bearing date September 4, 1884, for a period of two years from the thirtieth of September following. The defendants entered into possession of the demised premises, and occupied them for the term and paid the stipulated rent of $5,000 per annum. The covenant upon which this action depended was to the effect that the defendants, during the term would, at their own expense, keep and maintain the mill, water-power, machinery, tools and appurtenances, including the dam and race-way, in good repair and condition, and further, that after the expiration of the term, they would surrender the demised premises in as good condition as reasonable use and wear thereof would permit. The complaint charges a breach of these covenants in various particulars, not important now to specify, on account of which a large sum was claimed as damages. The defendants covenanted in the lease not to run the mill over-time, without the consent of the underwriters and companies insuring the same first had, and in case permission to do so was given, they were to pay the plaintiff any additional sum that he would be, for this reason, obliged to pay as premium on the risk insured. That the defendants, in compliance with the lease, gave the plaintiff notice on March 3, 1885, that it was their intention to run the mill over-time, and requested the plaintiff to get the consent of the insurance companies for that purpose, with which request the plaintiff complied, at an expense to him of $300 in additional premiums, which the defendants never refunded. The defendants' answer put in issue all the allegations of the complaint, with respect to a breach of the covenants of the lease and for a separate defense, and as a counter-claim alleged that both prior to and at the

time of the execution of the lease the plaintiff promised and agreed with the defendants that he would, at his own expense, make such repairs to the premises, appurtenances and machinery about to be included in the lease as would be sufficient to put the same in good, full and complete working order and repair, prior to the time that the defendants' right of entry should accrue. That the defendants refused to sign the lease until such repairs were made, or until plaintiff promised so to do, whereupon the plaintiff, as an inducement to the defendants to execute the lease, and in consideration thereof, agreed to put the premises and machinery covered by the lease in good, full and complete working order and repair. That in pursuance of this agreement the plaintiff requested and employed the defendants to make the repairs themselves at his expense. That in making the repairs contemplated they performed labor and furnished materials of the value of $2,500 and upwards, which the plaintiff had not paid to them. After the covenant in the lease providing for the surrender of the premises, follows this provision : " It being understood that the said premises shall be in good repair before entry of the said party of the second part, and it is also agreed that the said party of the first part shall put in steam pipes for heating."

The issues were tried by a referee, who found that the plaintiff stipulated in the lease to put the premises in repair before entry by defendants, and that the plaintiff agreed, by parol, that if defendants would make such repairs he would pay to them the cost of the same. That the defendants then did make such repairs which the plaintiff was bound to make under the agreement at a cost in all of $2,413.15. He also found that the defendants surrendered the demised premises at the expiration of the term in as good condition, reasonable wear and tear excepted, as they were in when received from the plaintiff, and bettered by at least the amount above mentioned expended by the defendants in the repair of the property. That, besides the sum so expended, the defendants during the term expended a large sum in keeping and maintaining the demised premises in good order and that they did

keep and maintain the property in as good order and condition as that in which they had received them, except that they failed to surrender and turn over to the plaintiff certain machinery and tools, covered by the lease, of the value of $20. He sustained the plaintiff's claim for additional premiums paid by reason of running the mill overtime and found the amount to be $362.12 which the defendants had not refunded. He then deducted the two sums found in favor of the plaintiff from the sum found in favor of the defendants and directed judgment in favor of the defendants for the balance, $2,031.03, and that the complaint be dismissed.

The covenants of the lease, when all read together, mean that the lessor will put the premises in good working order and repair before the commencement of the term, that the lessees will then keep them in repair and at the end of the term surrender them to the lessor in as good condition as they were in at the commencement of the term, when the lessor had performed his covenant to put them in good working order, ordinary use and wear excepted. The tenant was to receive the demised premises in good working order and repair, and he was to leave them in that condition as near as reasonable use and wear would permit.

Whether there was a breach of the covenants of the lease on the part of the defendants in failing to keep the premises in repair, or in failing to surrender them in the condition required by the lease, was a question of fact which has been determined against the plaintiff by the referee upon a mass of conflicting evidence, and in this court his finding on that point must be treated as conclusive.

It is not important to consider the effect of the plaintiff's parol promise to put the premises in a good and tenantable condition before the commencement of the term, because the lease itself contains a sufficient provision on this subject. The plaintiff's parol request to the defendants, after the delivery of the lease, to make the repairs contemplated, and his promise to indemnify them for the cost, was certainly binding upon him. The request and promise, as well as the extent and cost

of the repairs, involved a question of fact which the referee has determined against the plaintiff. The voluminous record before us contains a mass of evidence bearing on the two questions referred to, but the most favorable view that can be taken for the plaintiff would be obliged to admit that it was at least conflicting. In this court any discussion of it would be quite useless, as the finding of the referee must be accepted as the true state of the facts.

The plaintiff's counsel has called our attention to various requests presented to the referee to find upon the evidence the facts therein incorporated. We have examined them with some care, and think it is sufficient to say with respect to them that none of the requests that were material or that the plaintiff was entitled to have passed upon by the referee, were so conclusively established by proof as to warrant this court in holding that there was legal error in declining to find as requested.

The learned counsel for the plaintiff argues, as ground of error, requiring this court to reverse the judgment, the omission of the referee to indicate, upon the margin of the paper, or otherwise, his disposition of certain propositions of fact and law submitted to him under section 1023 of the Code. That section requires that " at or before the time when the decision or report is rendered, the court or the referee must note in the margin of the statement the manner in which each proposition has been disposed of, and must either file or return to the attorney the statement thus noted ; but an omission so to do does not offset the validity of the decision or the report." As to some of the numerous requests submitted to the referee in this case, he made no note in the margin indicating the disposition made of them. As to the others, he complied with the Code. Section 993 provides that a refusal to make any finding on a question of fact, seasonably submitted, is a ruling on a question of law. There are two answers to the plaintiff's contention in this respect. First. Nearly all the propositions are either covered by the findings made by the referee and stated in his report, or they are immaterial. The most import-

ant of them relate to provisions of the lease which the referee was asked to find. The lease and every part of it was in evidence and is in the record now before the court, and the plaintiff has the benefit of all its provisions. It was not necessary that the referee should incorporate it in his report or make separate findings in regard to all its stipulations. The referee could find nothing which was not embraced in the instrument, and the plaintiff could not be injured by his failure to state, in the form of a distinct proposition, what the lease did or did not contain. (*Callanan* v. *Gilman*, 107 N. Y. 360.)

Secondly. The mere fact that the referee filed the statement or delivered it to the attorney, without having noted his decision upon the margin opposite each proposition, is not a "refusal to make any finding whatever," within the meaning of section 993. That may be the result of mistake, which is liable to occur, especially when the requests are very numerous. If the referee had failed to file or deliver the paper at all, that would not affect the validity of his decision, under section 1023. Much less can it be said that his omission to note upon the margin of the paper his disposition of one or several requests, is an error of law reviewable in this court. In such a case, the proper practice is to apply to the court to send the report or the statement back to the referee for the purpose of supplying the omission or correcting the mistake, if it be one. It is only when it affirmatively appears by the record that the court or referee has refused or declined to pass upon requests or make findings that this court can treat the refusal as a ruling on a question of law. The omission of the usual note in the margin of the statement does not necessarily show in this case that the referee refused to pass upon the plaintiff's findings, so that, even if there is, among the requests referred to, anything material, or that would be beneficial to the plaintiff, the question is not properly before us on this record.

There are many exceptions in the record to the rulings of the referee admitting or excluding evidence offered by either party. But very few of these exceptions merit any special notice. In order to prove that the machinery was not in

good repair when the defendants' term commenced, they were permitted to give the testimony of witnesses as to its condition subsequent to the commencement of the term. Some of these witnesses were experts and they all described the condition of the articles of machinery, the appearance of the factory, and other defects in such a way as to reflect light upon the condition of the same articles a few months or weeks before. Evidence as to the condition of machinery in a mill at a particular date is competent, ordinarily, to show what its condition was at a date shortly before. It is not necessary that the witnesses should have seen the machinery at or before the time when its condition is to be ascertained. The fact that they did not examine or see the machinery at the very day, nor till some days or even months subsequent to the time in question may affect the value, but not, ordinarily; the competency of the testimony.

The plaintiff sought to prove by a witness who worked in the mill for the defendants, a conversation between defendants' foreman and a third party as to the condition of the machinery. This was excluded and properly so. The plaintiff could not prove his case, as to the condition of the premises, by declarations of the foreman to a third party.

The plaintiff, in order to show that the machinery was in good order at the commencement of the term, offered samples of silk made from it in 1883, which were excluded. Aside from any other objection to this species of evidence, it was quite absurd to suppose that the referee could judge as to the condition of the machinery from the character of the products of the mill. Proof was also offered to show that defendant employed incompetent hands as a basis for an inference that they necessarily damaged the machinery. This was properly excluded. It was sought to impeach one of the witnesses for the defendants who gave material testimony by proof of his admissions, after the testimony was given, to the effect that it was not truthful. This was excluded. A witness cannot be impeached by proof of declarations made out of court, before or after the trial, contradictory of his testimony, until a proper

foundation is laid for the impeachment by interrogating the witness himself in regard to this statement.   The other exceptions in the case are of no greater and many of them are of very much less importance.   None of them presents any question that requires a reversal of the judgment.   The record contains a notice of appeal from two orders made in the case, and which have been affirmed at the General Term.   The referee's report was made and signed July 14, 1888.   It was delivered on the seventeenth and filed on the eighteenth of July, and on the twentieth of that month he died.   One of the orders denied a motion made by the plaintiff to set aside the report on the ground that the referee's mind was impaired some time before his death, and he was incompetent to perform the duties of a referee.   The other order granted to the defendants an additional allowance of costs on the ground that the case was difficult and extraordinary.   Both motions were addressed to the discretion of the court and the decision of the General Term affirming them is not reviewable here.   The judgment should be affirmed and the appeals from the orders dismissed, with costs.

All concur.

Ordered accordingly.