Edwin B. Root, as Administrator, etc., Respondent, *v.*
Charles A. Borst, Appellant.

In an action to recover possession of a manuscript catalogue of stars, which was made by defendant and his two sisters working to aid him at his request, and was written upon paper purchased and prepared by him, P., the original plaintiff, claimed title on the ground that the work was done for him, by defendant as his servant. This was denied by defendant. P. was director of an observatory, and defendant was his assistant. On the trial defendant testified that in 1885 he, in the presence and hearing of P., showed the catalogue to H., stating that it was his (defendant's) work, and he had done it at the suggestion of P. that he should do some special work as his own. H., as a witness for defendant, corroborated his testimony as to the conversation. P. was thereafter permitted, under objection and exception, to show. that at a meeting of the Academy of Science in 1886, at which H. was present, he read a paper entitled "Catalogue of Stars," and was also permitted to read certain letters written to him in 1886 by H. referring to his catalogue of stars. These letters were objected to on the ground that the attention of H. when a witness had not been called to them. *Held*, that the reception of the evidence was error.

(Argued March 1, 1894; decided April 10, 1894.)

Appeal from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made September 13, 1892, which affirmed a judgment in favor of Christian H. F. Peters, plaintiff's intestate, entered upon a decision of the court on trial without a jury. Peters died after judgment and plaintiff was substituted.

This action was brought to recover certain books and papers termed a Star Catalogue.

The facts, so far as material, are stated in the opinion.

*William Kernan* for appellant. The letters of Professor Hall to Dr. Peters, offered on behalf of the plaintiff and admitted against the objection on behalf of the defendant, were not competent evidence. (*Stacy* v. *Graham*, 14 N. Y. 492 ; *Pendleton* v. *E. S. Co.*, 19 id. 13 ; *People* v. *Stevens*, Id. 549 ; *Trustees, etc.*, v. *B. F. Ins. Co.*, 28 id. 153, 160 ;

*Howard* v. *Howard,* 18 Wkly. Dig. 330; *McCollock* v. *Dobson,* 133 N. Y. 114; *Fitch* v. *Kennard,* 46 N. Y. S. R. 271; *Hubbard* v. *Briggs,* 31 id. 518, 536; *Holmes* v. *Anderson,* 18 Barb. 420.)

*Elihu Root* for respondent. The letters of Mr. Hall were admissible, and the objection of the defendant was properly overruled. (*Romertze* v. *E. R. N. Bank,* 49 N. Y. 577; *Byrnes* v. *Byrnes,* 102 id. 4; *Stephens* v. *People,* 19 id. 549; *Pendleton* v. *E. S. D. Co.,* Id. 13; *Morris* v. *Wadsworth,* 17 Wend. 103, 119; *Bedell* v. *Powell,* 13 Barb. 183, 184; *People* v. *Taylor,* 3 Cr. Rep. 297, 300; Code Civ. Pro. § 1337; *Reynolds* v. *Robinson,* 82 N. Y. 105, 106; *Healy* v. *Clark,* 120 id. 642; *Coffin* v. *Hollister,* 124 id. 645; *Goodsell* v. *W. U. T. Co.,* 130 id. 446; *Lamb* v. *C. & A. R. R. Co.,* 2 Daly, 454, 475; *Forrest* v. *Forrest,* 25 N. Y. 501, 510.) The evidence fails to establish the defendant's claim of title to any of the property in question. (*Silsbury* v. *McCoon,* 3 N. Y. 379; *Palmer* v. *De Witt,* 47 id. 532; *Tabor* v. *Hoffman,* 118 id. 30.) The judgment should be sustained if substantial justice has been done and it is warranted by the evidence. (*Stilwell* v. *M. L. I. Co.,* 72 N. Y. 385, 388; *Woodruff* v. *McGrath,* Id. 255; *Baird* v. *Mayor, etc.,* 96 id. 567; *Lowery* v. *Erskine,* 113 id. 52, 55; *Fellows* v. *Northrup,* 39 id. 117, 119; *Crane* v. *Baudouine,* 55 id. 256, 264; *Burgess* v. *Simonson,* 45 id. 225, 228; *Starbird* v. *Barrons,* 43 id. 200; *Whitman* v. *Foley,* 125 id. 651; *Roosa* v. *Smith,* 17 Hun, 138, 139; *Westerlo* v. *De Witt,* 36 N. Y. 339; *Sherwood* v. *Hauser,* 94 id. 627; *Griswold* v. *Learned,* 9 N. Y. S. R. 242, 244; *C. N. Bank* v. *Crosby,* 16 id. 226; *Laidlaw* v. *Slayback,* 23 id. 259; *Eighme* v. *Strong,* 15 Civ. Pro. Rep. 119.)

Finch, J. We are satisfied that the paper read by Dr. Peters before the National Academy of Science, and the letters addressed to him by Professor Hall were erroneously admitted in evidence, and that the vital question on this appeal

is whether those errors can be disregarded as not materially affecting the result, and working no appreciable injury to the defense. That inquiry makes necessary some understanding of the facts, and of the character and tendency of the erroneous evidence.

The form of the action was in the nature of a replevin, and the plaintiff Peters sought to recover possession of a manuscript catalogue of stars, the ownership of which he claimed. That manuscript was the work of the defendant and his two sisters, written upon paper prepared and paid for by him, steadily and continually kept and retained in his own possession, and which must be deemed to be his unless Peters has in some manner established a title to it in himself. The burden rests on him to show the acquisition of such a title, and any doubt about it must go to the benefit of the defendant.

The proof shows that Peters in his lifetime was director of the Litchfield Observatory at Hamilton College. He taught the class in astronomy and received from the college a salary of fifteen hundred dollars, which was provided by the endowment of Mr. Litchfield, and which the college was unable to increase. The director's position was quite different from that of an ordinary professor. Beyond his work as a teacher he was expected to make original observations and investigations, to be published with the aid of the patron of the observatory or of other interested or generous friends, and so build up and broaden its scientific reputation. And since the college was financially unable to pay him anything approaching a reasonable salary, it may easily be inferred that the director would be allowed and expected to do for himself much work of his own for which he would not be accountable to the college, and which he could use or dispose of as he pleased. Such work Dr. Peters did. He gives us a description of it. Before coming to Clinton he began to make a collection of the positions of stars not on the general catalogues, but noted by different observers who had selected them out from that faint and unobtrusive swarm not enrolled in any advertised galaxy. His collection was not a catalogue fitted for publication, but a.

gathering of loose material lacking arrangement in scientific order. His original motive for the collection and principal use of it seems to have been to aid in the preparation of charts of the stars, a work of great magnitude and importance; and also to furnish him with what he calls "comparison stars," which he likens to the monuments of the ordinary surveyor from which measurements are taken and courses run. Of these charts he had finished twenty, but had planned one hundred and eighty-two, and had before him in that direction the study and work of years. In addition he prepared for publication papers on the transit of Venus, and quite a serious investigation of solar spots.

The defendant graduated in 1881 and went into the observatory as an assistant. The exact character of his relation to the director and to the college is somewhat ambiguous and open to different inferences. He was appointed by the director and not by the college authorities, and seems not to have been regarded as a member of the faculty, and yet taught the classes in astronomy in the absence of the director with the explicit assent of the trustees. Peters regarded him as his servant, and looked upon everything done by the assistant as done for him personally and appurtenant to his interest and reputation: and yet it is obvious that the employment of an assistant originated with Mr. Litchfield who suggested it and promised to pay the necessary expense, acting in behalf of the college, assuming its appropriate burden, and notifying its treasurer of his purpose to pay the salary. He did pay it during his lifetime, although it was done through Peters, and to some extent, if not fully, the same payment was made after Mr. Litchfield's death by his son. It is quite probable that out of his own small salary, little more than enough to ward off starvation, Peters would have been very unlikely to have devoted one-third to the employment of an assistant. And yet it is very certain that Peters regarded Borst as his personal servant, and that the latter in the beginning drew no line of distinction between his work for the director personally and that which he did for him as one of the college faculty.

Borst put in shape for publication the manuscript relating to the solar spots; assisted in the observations and calculations necessary for the star charts; and continued the entry of star positions in the books devoted to their collection.

But, as Peters had liberty to use his own time for his own purposes, so far as it was not absorbed by his collegiate duties, so also Borst was free to use for himself the hours not due to the service which he owed Peters, and which belonged to himself alone : and this right, and the existence of such hours Peters recognized, because he advised Borst to do some valuable work for his own benefit and reputation. The star catalogue in controversy was beyond a doubt the product of those otherwise unoccupied hours which belonged to Borst personally and not at all to the college or to Peters ; and the latter can have no title to it unless he can show an agreement that it should be prepared for him and become and be his property. For it is clear that he got no title to it by any work that he did upon it. His own loose collections may have helped somewhat, and his advice and suggestions more, but what he in fact did upon it was almost trifling, and is described by Professor Hall as adding little to the value of the manuscript : and the few emendations that he made and the faint show of interest in it which he displayed until he claimed title to it is entirely consistent with the ownership of Borst to which the latter testified.

There was no misunderstanding between the two for about three years. But in November of 1884 Peters testifies that he formed the purpose of using his loose material, already gathered in two volumes, for framing a star catalogue, scientifically arranged in the order of right ascension, and reduced to a common epoch, and set Borst at that work, who accepted the duty. The director is sure of the date, but upon the vital question of what he then said to Borst, or the latter said to him, he is unable to repeat a single word. The burden was on him to prove such an agreement ; it was the decisive fact through which only he could derive a title; and yet he is unable to repeat a single phrase of the conversation. He

does not remember where it was, and says : "I do not know what the talk was between me and him on that occasion," and says again : "There was no special talk," and adds : "I cannot give any conversation at any time between me and him in reference to it." And so, instead of the words of agreement, he gives us his understanding of what his rights were. That appears in his cross-examination where he testified "there was no regular talk because he had nothing to say about it. He was my assistant."

The defendant denies any such agreement and shows that he had already, at this alleged date, been busy for six months upon the star catalogue, and produces the papers indicating that fact. He tells us how he came to do it; that it grew from the suggestion of Peters himself, who advised him to undertake some special work out of which he might obtain personal reputation and scientific position, and who volunteered to aid and assist him in the preparation of the star catalogue which he selected for his own personal work. The director admits having given some such general advice, but denies its application to the manuscript in controversy.

At this point the contradictions are violent and cannot be reconciled. It is possible to see that Dr. Peters, regarding the defendant as his servant, in the habit and custom of appropriating Borst's work as done for him, might be mistaken in his memory and understanding of the facts relating to the star catalogue, but no such explanation will do for Borst. Not only must falsehood be charged upon him, but also a deliberate purpose and plan to take from the director what was his and deprive him of well-earned reputation. That is a solution of the conflict which should only stand upon clear and strong proof. That Borst, as a mere assistant of Peters, should not only help him during observatory hours, which we might very well expect, but should devote to his service all time of his own, working late into the night and absorbing every spare moment; that he should bring his two sisters to Clinton and demand of their love for him an enormous amount of labor and patient industry, only to magnify the reputation of Peters,

and on a salary of six hundred dollars a year; that he should have asked Peters to write a preface to the latter's own work; that he should have kept the results of his labors steadily and as a rule in his own personal possession instead of leaving it at the observatory and in the director's control; all this we must believe on the basis of the findings; and in connection with an amount of treachery and falsehood quite painful to contemplate. Of course we are not to review the conclusions of fact, but we are at liberty to say that the title in Peters to Borst's work was not so established as to make immaterial the receipt of illegal evidence bearing upon the result. Obviously, disinterested and patient judgments might differ as to the correct and proper inferences to be drawn, and comparatively slight matters might turn the scale. To the evidence improperly admitted we must now direct our attention.

The plaintiff was permitted to show that Dr. Peters was present at a meeting of the Academy of Science in Boston and at that meeting read a paper described as "No. 13. Peters, C. H. F. Catalogue of Stars from Various Astronomical Positions," and was also permitted to read certain letters addressed to him by Professor Hall. Borst had testified that in the summer of 1885 Hall was at the observatory, and was shown by the defendant the star catalogue here in question; that Hall spoke of it as involving a great amount of labor and Borst said it was "his work," and he had done it upon the suggestion of Peters that he should attempt some special work of his own; and that this occurred in the presence and hearing of Peters, whose only remark was as to the convenience of a wide margin to the manuscript. Thereafter Hall was sworn and he corroborated Borst in every particular except that he was unable to say that Peters was present at the moment of the conversation. On the cross-examination of Hall he was asked if he was present at the meeting of the academy in 1886; if Peters was there; and then if the paper referred to was read; to which he answered in the affirmative, the defendant objecting to the production of the pamphlet and to the reading of the paper from it. This evi-

dence in no manner contradicted or tended to contradict the witness. It simply proved the unsworn declaration of Peters in the absence of Borst, and in his own behalf. It showed that he stood before the academy claiming to be the author of a catalogue of stars, and was made the basis of an unwarranted argument by the court that Hall must have been mistaken, as if the fact that Peters claimed the catalogue in 1886 was any proof that Borst did not claim it in 1885. In addition Hall's letters to Peters, written in March, April and October of 1886, and speaking of his catalogue of stars, were admitted in evidence and made the basis of an argument that Hall could not have understood that Borst claimed the catalogue as his in August, 1885, when in the next spring the witness was referring to it as the work and property of Peters. These letters were specifically objected to upon the ground that the attention of the witness had not been called to them, and in Hall's absence were distinctly admitted as a part of his cross-examination. (*McCulloch* v. *Dobson*, 133 N. Y. 114.) The learned counsel for the plaintiff argues that the letters were not offered to contradict Hall, but on that theory they were not admissible at all, for the argument that Borst had put in evidence Hall's understanding that Borst owned the catalogue has no foundation in fact. He was neither asked what his understanding of the actual ownership was nor did he testify to any such understanding. Question and answer were confined to the actual fact of an actual conversation, and no inference of what the witness understood from it as to the fact of ownership was asked or given. Hall's opinion about it was totally immaterial unless for purposes of contradiction, and for that no foundation was laid. It was used for that purpose. The opinion of the court puts great stress upon it. It argues out from it a disbelief of the fact of the conversation sworn to by both Borst and Hall, and gives it decided weight in the discussion. The case on the facts is not at all so clear as to justify a disregard of these errors. It presents a very close and difficult question by reason of the subject-matter involved and the peculiar relations existing between the par-

ties, and we do not feel justified in saying that the result might not be different if no improper evidence should be received.

The judgment must be reversed and a new trial granted, costs to abide the event.

All concur, except Gray, J., not voting.

Judgment reversed.