Hurlbut, J.,
rendered the opinion of the court.
On October 7, 1913, plaintiff (defendant in error) brought an action against defendants (plaintiffs in error) to recover a judgment for $1,890, alleging an indebtedness of that amount for nine months’ rent (from February to October, inclusive, 1913) on certain premises on Blake street, Denver, Colorado, at the agreed price of $210 per month. It appears from the complaint that defendants occupied the premises in question from April 1, 1911, to *226 December 1, 1912, under a three years’ lease, entered into between them and plaintiff, which by its terms began April 1, 1911, and terminated April 1, 1914.
The answer admits the execution of the lease and/ the occupancy of the premises as alleged; but defends the action upon the ground that at the time of. the execution of the lease the foundation walls of the premises were of weak, porous, faulty material and construction, which fact was well known to plaintiff at that time, and unknown to- defendants; that after making and delivering, the lease as aforesaid the premises, on July 14, 1912, while occupied by defendants, were so injured by water (through no fault of theirs) as to render the premises untenantable, unsafe and unfit for occupancy; that such injury was occasioned by a sudden, unforseen and extraordinary flood, and that by rear son thereof defendants, under the terms of the lease, ceased to be liable thereafter for the payment of rent as provided therein; that plaintiff was informed of the untenantability of the premises as aforesaid, but failed and refused to make the same safe and fit for occupancy, and to restore the same to a tenantable condition; for which reason defendants quit and surrendered possession of the premises to plaintiff.
The case was tried to a jury and verdict rendered in favor of plaintiff for the full amount of rent sued for, with interest thereon, upon which verdict judgment was rendered. Defendants sued out a writ of error in the Supreme Court, and the case is here for disposition.
But few questions of law are involved in this proceeding. As to all the material issues of fact the evidence was sharply conflicting. . ■ . .
A large part of the briefs on behalf of both parties is devoted to a discussion of the weight, force and effect, which should be given to the testimony of witnesses, and the the deductions which ought to be made therefrom, as well .as the facts established thereby. All material issues of facts being, fairly in dispute, we do not feel warranted *227 in discussing the weight or credibility which ought to be given to the testimony adduced at the trial. That duty devolved upon the jury. A general verdict was returned, and we are called upon to review the evidence and proceedings below to ascertain therefrom if the verdict and judgment are supported by the record.
' We agree with defendants’ counsel in their assertion that the commanding question of fact controlling this controversy is: Were the premises rendered untenantable by the flood of July 14th, and if so, were the subsequent actions of plaintiff or defendants such as to relieve the latter of their liability to pay rent for the full term of the lease? A great deal of testimony was adduced by. both parties upon this issue. Defendants vigorously contended' at the trial (as they do here) that the water from the flood flowed into the basement of the premises and so affected the brick and mortar constituting its walls as to render the building unsafe, dangerous and untenantable; that plaintiff, after such damage or injury, failed and neglected to repair the injury done, in such a way as to make the building safe and tenantable, and for that reason they claim there was no further liability on their part to pay rent, under the terms of the lease, subsequent to December 1, 1912, the day they vacated the property. • In support of such claim they rely to a great extent upon the fllowing clause found in the lease, viz.:
“That in case said premises shall become untenantable by' reason of fire or otherwise, the rent shall cease while the same are being repaired; but that nothing herein contained shall be construed so as to compel the lessor to rebuild or repair said premises in case of destruction, unless he so desires.”
On the other hand, plaintiff contends with equal zeal that the injury to the basement walls from the flood (if there was any injury), was of no moment, was not of a serious or permanent nature, and did not render the build *228 ing dangerous or unsafe, or untenantable, except for a very short time while the flood waters remained in the basement. It is further claimed by him that, under the terms of the lease, defendants were to make general and ordinary repairs ; that, a few days after the flood, defendants undertook .to and did repair the damage, by placing posts and girders lengthwise through the basement, and rendered a bill therefor to plaintiff, which he paid; that all floors above the basement were used by defendants, after the flood, the same as they had been theretofore; that defendants continued to use and occupy the premises for more than three months after the flood, before they began to vacate the same, which was an unreasonable time upon which to predicate their right of abandonment of the premises upon the ground of danger or untenantability of the premises; that all the water had disappeared from the basement three or four days after the flood; that the walls of the basement were twenty-one inches thick; that defendants stored some goods in the basement after the posts and girders were put in; and that the evidence clearly shows the premises were never 'unsafe for occupancy, either before or after the flood, and were at no time untenantable, except that the basement only was untenantable for a few days immediately following the flood.
The evidence is undisputed that the flood was of an extraordinary and unusual nature; that, at that time; defendants had goods or merchandise in the basement of the permises, which were damaged; that, shortly after the flood, under the advice of an architect, defendants caused posts and girders to be placed in the basement, the expense of which they called upon the plaintiff to pay, which he did; that defendants remained in the occupancy of the premises for over three months after the flood, and then began to move their goods out, and continued to so remove them until November 30th following, at which time they tendered the keys of the premises to plaintiff, after paying all rent due *229 up to and including the last mentioned date.
Whether or not as a matter of fact there was an inherent defect in the basement walls, arising from defective brick or mortar, or from defective foundation; or the flood waters of July 14th affected the same in a degree that made the building unsafe for occupancy thereafter; or the premises, including the basement, were safe and tenantable for use by defendants after .the girders and posts were placed in the basement, were controlling issues in the case, and the determination of such issues by the jury was decisive of the controversy between the parties as to those issues. Such issues were fairly submitted to the jury, under proper instructions, and their findings were adverse to defendants’ contentions in that regard. The jury having so found, it is evident that defendants were liable for the full payment of rent during the unexpired term of the lease.
As to the safety of the building before and after the flood, a number of architects, brick contractors and building inspectors, including deputies, of long years’ experience, testified as experts on behalf of plaintiff. Their testimony was positive, and to the effect that the building was, and had been, sound and safe for occupancy at all times before and after that time, and up to the time they made their examinations. As against this testimony, defendants’ witness Baerresen, an architect of repute and experience, testified exactly to the contrary. But the jury appears to have found that issue in favor of plaintiff. Defendants, however, complain of the rulings of the court in admitting such testimony of plaintiff’s witnesses, over their objections, and assert the same to have been fatal error, for the reason that none of such witnesses examined or inspected the building to ascertain its safety or unsafety, until months after the flood had occurred, covering a period of from three to nineteen months subsequent thereto. We are of the opinion that the court did not err in such ruling. The reeord discloses that the testimony of such witnesses was based upon careful *230 inspection and examination of the basement walls of the building after the flood. They testified that two holes were made in different places in these walls, at their suggestion, which disclosed that they were twenty-one inches in thickness and constructed of good, hard brick and mortar’; that they were unaffected by any prior action’ of water thereon; that in their opinion they were sound, well constructed, and of a permanent nature, which rendered the building absolutely safe for occupancy, and had been of equal safety and sound construction at all times prior to the examination; that in fact the building became more safe and secure as time passed by, by reason of the walls thereby becoming more homogeneous. We think the testimony of such experts was admissible as evidence to go to the jury for what it was worth. The jury might have considered it as being entitled to less credence or weight, by reason of the fact that the examinations upon which it was based were made months after the flood occurred, but if so this would not render the evidence inadmissible as expert testimony. McCulloch v. Dobson et al., 133 N. Y. 114, 30 N. E. 641; Marston v. Dingley, 88 Me., 546, 34 Atl., 414; Huber Mfg. Co. v. Hunter, 99 Mo. App. 46, 72 S. W. 484.
Defendant Harry IT. Post was a witness at the trial, and during his cross-examination identified a letter written by defendants to plaintiff, on October 23, 1912; whereupon it was offered in evidence by plaintiff and admitted over the objections of defendants, who insist that the ruling was erroneous and highly prejudicial to their rights, laying great stress upon this supposed error. All the letter contained was a brief statement to the effect that defendants had bought a building and were then engaged in moving thereto some of their goods from the leased premises, and requesting plaintiff to call on their attorneys, who would take up with them the matter of the lease, which was in their possession. As we read the letter it does not contain. a word or sentence which could be reasonably interpreted as *231 prejudicial-to defendants’ case. The fact that the letter contained nothing about the untenantability of the premise's, was a circumstance that might properly be considered by the jury Avith the evidence, as bearing upon the good or bad faith of defendants’ claim that they abandoned the premises on account of their untenantability. If it was error to admit the letter on cross-examination it was error without prejudice. The statements of plaintiff’s counsel, accompanying its admission, could not affect its admissibility as evidence. As to whether or not such statements Avere improper, that is another question. They were not objected to, however, nor was any motion made to strike them out.
■Defendants’ next contention is that fatal error was committed by the court in refusing to give instructions numbered two, three, five and six, requested by them. We have carefully examined these instructions, and believe the contention to be untenantable. The substance of number two, so refused, seemed to be fairly included within instruction number three given by the court. The instruction refused was not complete, as it failed to recognize the evidence which tended to show that defendants, at the expense of plaintiff, immediately after the flood, made repairs which rendered the building safe and tenantable. The given instruction remedied the defect. .The substance of refused instruction number three was given in instruction number three given by the court. Refused instruction number five was properly refused by the court, as it was not a fair statement of the law under the issues and evidence adduced. Instruction number six, tendered by defendants, was refused. It reads as follows:
“The jury are instructed that in weighing the evidence of experts they may take into consideration the time of an examination,. and that the jury are-the judges of- whether an examination made at the time of damage is entitled to more or less Aveight than- an examination made at a later *232 time, and that they have the right to find that an examination made after a lapse of ten months or more has less weight than an examination made immediately after the damage.”
While it may be said that some parts of the instruction are good, other parts are argumentative and prejudicial, but on the whole it is bad, hence it cannot be said that the court committed error in refusing to give it as presented. In our opinion that part of the instruction which would have been proper to give to the jury was substantially incorporated jn instructions given by the court, so in either case Ave think the action of the court in refusing to give the instruction is free from error.
Defendants allege error in the giving of instruction number three. The instruction in substance was that if the jury believed from the preponderance of the evidence that an unusual flood had injured the building and its walls to such an extent as to render it unsafe for the purposes for which it was leased, of which fact plaintiff had notice, and thereupon failed within a reasonable time to put it in tenantable condition, their verdict should be for defendants; unless the defendants made the repairs necessary for that purpose and presented the bill therefor to plaintiff who paid the same, in which event the verdict should be for plaintiff. We discover no error in this instruction, in view of the issues and evidence adduced at the trial. The record discloses a great real of evidence upon the facts alluded to in the instructions, most of which was conflicting. Under the terms of the lease, if the premises became untenantable (caused by fire or otherwise), the rent y?as to cease while repairs were being made. The evidence is undisputed that a few days after the flood of July 14th defendants, at th« expense of plaintiff, made certain' repairs by placing girders and posts in the basement of the leased building, and remained in possession thereof for over three months thereafter, before beginning to move out of the same. Defend *233 ants, however, claim that such improvements were only temporary, and that the premises were unsafe and untenantable notwithstanding such repairs. This was also a material issue of fact which was properly left for the jury to determine.
Decided March 8th, A. D., 1915.
Rehearing denied April 12th, A. D. 1915.
A number of other questions have been presented by the briefs, but, having passed upon the three specific points which defendants have urgently pressed upon the attention of the court in their briefs, we see nothing in the other questions discussed that would warrant a different conclusion from that heretofore expressed. From our view-point the three points determined are decisive of this appeal.
The judgment will be affirmed.