## PACE *v.* OPPENHEIM and Another.

A demurrer to a complaint, because "the complaint does not state facts enough to entitle the plaintiff to relief," is substantially within the fifth specification of § 50, 2 R. S. p. 38.

A complaint under oath charging an administrator with having failed to make out and return proper inventories and sale bills, as required by § 34, 2 R. S. p. 255, and § 45, *id.* p. 257, is sufficient to authorize the removal of the defendant for neglect of his duty as such administrator, under the provisions of § 22, 2 R. S. p. 252.

An inventory and appraisement under the provisions of 2 R. S. p. 279, in regard to the "disposition of estates not worth over 300 dollars," do not dispense with the necessity of making an inventory and appraisement by an administrator subsequently appointed.

An inventory and appraisement made under the statute in relation to the

May Term,
1859.

PACE
v.
OPPENHEIM.

"disposition of estates not worth over 300 dollars," is not conclusive on the question of the value of the property.

The widow of the decedent in such case, is sufficiently interested in the estate to entitle her to maintain a suit to remove the administrator for failing to make and return an inventory.

When the Court decides against a party on demurrer, he may except to the ruling of the Court by bill of exceptions; and, when such bill states that "after hearing the argument the Court sustains the demurrer, to which opinion of the Court the plaintiff excepts," it is sufficiently shown that the exception was taken at the time.

In such case no bill of exceptions is necessary.

A joint demurrer filed by two defendants should be overruled, unless it be well taken as to both.

Thursday,
June 16.

APPEAL from the *Wells* Court of Common Pleas.

WORDEN, J.—Complaint by *Penelope Pace* against the defendants, alleging that she is the widow of *Michael Pace*, deceased, who died in *Wells* county on the 27th of *February*, 1855, leaving less than 300 dollars worth of property, which was duly appraised by two competent appraisers, one of whom was appointed by the clerk and one by the plaintiff, at the sum of 275 dollars, 30 cents, which appraisement was duly filed in the office of the clerk of said Court; whereupon she claimed that the property should be set off to her, &c.; that afterwards said *Oppenheim*, to defraud her of her just rights in the premises, filed his affidavit in the office of the clerk of said Court, to the effect that the firm of *Daily* and *Oppenheim* were creditors of said *Michael*, and that said *Oppenheim* was informed and verily believed that the real estate of said decedent was improperly valued, and that said estate exceeded in value 300 dollars; whereupon two other appraisers were appointed, who afterwards returned their appraisement, and thereupon the said *Oppenheim* was appointed administrator of said estate by said Court; that the last-mentioned appraisers did not examine all of the property, but fraudulently reported that it had been exhibited to them, when in fact they had not seen all the personal property, and returned a fraudulent appraisement beyond the true and fair value of the property, to cheat and defraud the plaintiff out of said property, and with the fraudulent intent to have the said *Oppenheim* appointed

administrator of said estate; that said *Oppenheim*, in pur-
suance of said fraudulent design, never had said prop-
erty inventoried and appraised; that the last-mentioned
appraisers knew, at the time they returned their appraise-
ment, that it was unjust, and that if a fair appraisement
had been had, the property, both real and personal, would
have been set off to her; that *Oppenheim*, without having
inventoried and appraised the interest of the decedent in
a certain piece of land described in the complaint, sold or
pretended to sell the same, without warrant of law, to one
*George T. Biddill* (who was made defendant, but as to
whom process was returned "not found,") who pretended
to buy the same, with a full knowledge of all the facts set
forth, and with the intent to further the fraudulent designs
of said *Oppenheim*, but has never paid or tendered, nor
has *Oppenheim* ever received any money on said purchase;
that with a full knowledge of all the facts, the said *Thomas*
bought, or pretended to buy, said land from *Biddill*, but
the same has not been conveyed; that all the acts herein
set forth were consummated with the express design to
cheat and defraud the plaintiff out of her said property;
that the last-mentioned appraisers were appointed at the
*April* term of the Court, 1855, and did not make their
return until the *October* term of the same year; that the
appointment of *Oppenheim* as administrator was obtained
by fraud, &c.

Wherefore the plaintiff prays that said appointment be
revoked and set aside, and all his acts as such adminis-
trator be declared null and void, and that the possession
of the real and personal estate of decedent be delivered to
her, and that the defendants be restrained and enjoined
from proceeding in the matter herein set forth, and for
such other and further relief as will be just.

The defendants, *Oppenheim* and *Thomas*, appeared and
filed a demurrer to this complaint, which was sustained
by the Court, and exception was taken. Final judgment
was rendered for the defendants.

The plaintiff brings the case here, and assigns for error
the ruling of the Court below on the demurrer.

May Term,
1859.

PAGE
v.
OPPENHEIM.

The cause of demurrer assigned is, that "the complaint does not contain facts enough to entitle the plaintiff to relief."

It is objected that the demurrer is insufficient as not conforming to the statute; but we think it is substantially within the fifth specification of § 50, 2 R. S. p. 38.

We are of opinion that, for one purpose, the complaint is good as against *Oppenheim*, viz., as an application for his removal for a neglect of his duty as such administrator. It is duly verified as the statute requires for that purpose, and charges that he has never caused the property to be inventoried and appraised, and that without appraisement or authority of law he has proceeded to sell certain real estate of the decedent, &c.

The statute requires the administrator to make out a full inventory of the personal property within sixty days after his appointment, and cause the same to be appraised, and within thirty days thereafter to file the same in the clerk's office. 2 R. S. pp. 255, 257, §§ 34, 44. It is also provided (p. 252, § 22), that an administrator may be removed, and his letters superseded, on the written application, verified by oath, of any person interested in the estate, when, amongst other things, "he shall fail to make and return inventories and sale bills, or to render an account of his administration according to law or the order of the Court, or shall waste, or fail to pay over according to law, the money of such estate."

The inventory and appraisement made previously to the issuing of letters of administration, under the provisions of the statute for the "disposition of estates not worth over 300 dollars" (2 R. S. p. 279), do not dispense with the necessity of such inventory and appraisement being made by the administrator if one be appointed. Such preliminary inventory and appraisement are only made for the purpose of determining whether administration shall be granted on the estate, or whether the whole property shall go to the widow, being not over 300 dollars in value. When, by such proceeding, it is ascertained that the estate consists of more than 300 dollars in value, administration

is granted, and the same duty devolves upon the administrator as if he had been appointed without any such preliminary steps having been taken. He is required to return his inventory, accompanied with an affidavit "that the same is a true statement of all the personal estate of the deceased which has come to his knowledge." 2 R. S. p. 257, § 45.

The preliminary inventory and appraisement may or may not embrace all the property, and it is not accompanied with the affidavit of any person that it does contain all of such property. And again, the preliminary appraisement is not conclusive, even on the question of the value of the property appraised; for if the administrator, at any time, discover that the estate is worth not over 300 dollars, he is required to report that fact to the Court, and the property, after deducting the expenses of administration, is to be delivered to the widow. 2 R. S. p. 279, § 135. How shall the administrator make such discovery, except by making a proper inventory of the estate, and causing it to be duly appraised?

The widow is "interested in the estate" sufficiently to make the application for a removal of the administrator under the statute; and the facts charged, in reference to the neglect of the administrator to make a proper inventory and appraisement of the property, are sufficient to require such removal.

There is a question made as to the sufficiency of the exception to the ruling of the Court on the demurrer. A bill of exceptions filed, as the clerk certifies, during the progress of the cause, says that "now come the parties, and the defendants file their demurrer, &c., and after hearing the argument of parties, the Court sustains the demurrer, to which opinion of the Court, &c., the plaintiff excepts," &c.

We think the bill of exceptions sufficiently shows on its face that the plaintiff excepted to the decision at the time it was made, and that the mode of excepting, viz., by a bill of exceptions, is sufficient. There is no noting of any exception in the record at the end of the decision,

and the only exception taken is contained in the bill of exceptions. No bill of exceptions would be necessary to save the question arising on demurrer; because the ground of objection would appear in the entry, and the party might except by causing it to be noted at the end of the decision, that he excepts. But we are of opinion that a party may also except to the ruling on demurrer in the more formal way of a bill of exceptions. No particular form of exception is required. 2 R. S. p. 115, § 344. The statutory provision dispensing with the necessity of a formal bill of exceptions in cases where the ground of objection appears in the entry, does not take away the effect of an exception taken in a more formal and well known way. Of course what is said in *Zehnor* v. *Beard*, 8 Ind. R. 96, and *Young* v. *McLane, id.* 357, as to the necessity of the exception being noted at the end of the decision, must be held applicable only to cases where no exception was taken to the ruling by a bill of exceptions formally prepared and made a part of the record.

The demurrer was filed by both *Oppenheim* and *Thomas*, and not being well taken as to *Oppenheim*, it ought to have been overruled.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*W. March*, for the appellant.

*L. M. Ninde* and *Z. Puckett*, for the appellees (1).

(1) Counsel for the appellees cited the following authorities:

1. Did the plaintiff take his exceptions at such time and in such manner as to enable him to raise any question in the Supreme Court? See 2 Bouv. L. D. 430; 4 Wash. C. C. 698; *Hornberger* v. *The State*, 5 Ind. R. 300; *Zehnor* v. *Beard*, 8 *id.* 96; *Young* v. *McLane, id.* 357.

2. Can the appointments, orders, and judgments of the Court of Common Pleas, sitting as a Court of Probate, be called in question by a complaint addressed to that Court exercising its chancery powers? Can they be collaterally impeached? See *Bissell* v. *Briggs*, 9 Mass. R. 462; *Termor's case*, 3 Rep. 79; 1 Phil. Ev. 341, 344, 346; 3 *id.*, Cow. and Hill's note, 600; *Allen* v. *Dundas*, 3 T. R. 130; 1 Conn. R. 8; 4 Day's Cas. 221; 5 Johns. Ch. 342; *Riser* v. *Snoddy*, 7 Ind. R. 442; *Ray* v. *Doughty*, 4 Blackf. 115; 5 Ind. R. 36; *Doe* v. *Anderson, id.* 33; *Babbitt* v. *Doe*, 4 *id.* 355; *Thompson* v. *Doe*, 8 Blackf. 336; *Doe* v. *Harvey*, 5 *id.* 487.