## GAAR, SCOTT & CO. v. WILSON.

[No. 2,563. Filed October 27, 1898.]

NEGLIGENCE.—*Complaint.—Personal Injuries.— Contributory Negligence.—Causal Connection.*—A complaint against a manufacturing company by an employe thereof for damages on account of personal injuries sustained by a shaft, or arbor, used in the construction of engines falling upon him, which avers that the shaft fell by reason of the attachment thereof being defective and out of order, the defendant having full knowledge of the defective condition, and that plaintiff was injured in passing same while in the line of duty and without fault, is sufficient to show negligence on the part of defendant and freedom from fault by plaintiff, and a causal connection between defendant's negligence and plaintiff's injury sufficiently appears. *pp. 92-97.*

PRACTICE.—*Ruling on Motion for New Trial.—Exception Saved by Bill of Exceptions.— Appeal.*—Exception to the action of the court in overruling a motion for a new trial may be saved in the bill of

Gaar, Scott & Co, *v.* Wilson.

exceptions, where the journal entry of the ruling on the motion shows that an appeal was prayed and time given to prepare a bill of exceptions, although there is no statement of an exception in such journal entry. *pp. 97, 98.*

APPEAL AND ERROR.—*Bill of Exceptions.*—A bill of exceptions showing that the portion containing the evidence is the original manuscript, and not containing any statement that the bill of exceptions is the original bill, will not be rejected, where the clerk certifies that the transcript contains full, true and complete copies of all the papers and entries in the cause, and that the official reporter who took down the evidence filed in the clerk's office his longhand manuscript thereof which is the same manuscript of the evidence incorporated in the bill of exceptions made a part of the transcript. *pp. 98-100.*

SAME.—*Bill of Exceptions.—Appointment of Stenographer.*—The Appellate Court will not refuse to consider the evidence for the reason that it is not shown by the bill of exceptions that the stenographer was selected or agreed upon by the parties, or that he was sworn to report the case, where the evidence was authenticated by the statement signed by the judge that it was all the evidence given in the cause. *pp. 99, 100.*

EVIDENCE.—*Defective Appliance.—Damages.—Proof as to Similar Accidents.*—Evidence in an action against a manufacturing company by an employe for damages on account of personal injuries sustained by a shaft, or arbor, used in the construction of engines falling upon him, describing the falling of other similar arbors in the same room prior to the accident in suit is improper, where it appeared by the evidence that the falling of the other arbors was occasioned by causes not shown to have affected the attachment whose defectiveness was charged in the complaint. *pp. 100-105.*

From the Henry Circuit Court. *Reversed.*

*W. A. Brown* and *Jackson & Starr,* for appellant.

*M. E. Forkner* and *Charles S. Hernly,* for appellee.

BLACK, J.—A demurrer to the appellee's complaint for want of sufficient facts was overruled. It was in substance shown by the complaint that the appellant was a corporation, etc.; that it had, at Richmond, Indiana, a manufacturing establishment in which it manufactured portable steam engines and other machines for the market; that it employed in this establishment a large number of employes who were en-

gaged in the building of said engines, etc.; that the appellee entered into the employ of the appellant about five years before the bringing of this action, and as such employe he was, under the direction of the appellant, engaged in working upon said machines for the appellant; that in building its steam engines, "there is used in one of the rooms, under the charge of a superintendent, what is known as a shaft, or arbor, made of metal, which is several inches in diameter and about eight feet long and is circular; that the said shaft is used for the purpose of being placed in a certain position in an engine, when it is being constructed, for the purpose of having metal poured around it, in order to form what is known as boxing; that when said metal is poured and said boxing is formed and completed, the said shaft, or arbor, is removed by the employes of the defendant and is placed upright beside posts in the room where they are used; that upon said posts are attachments provided by the defendant for the purpose of holding the said shafts, or arbors, upright in position until they are again needed; that the said shafts, or arbors, are heavy; that when the said attachments for holding the same in position are in proper order and condition, the said shaft will not slip therefrom and fall;" that on or about the 6th of April, 1896, the appellee was an employe of the appellant, and as such, under the direction of the appellant, was engaged in working upon an engine which the appellant was having constructed in its said machine shop, and it was a part of the duty of the appellee, while performing work aforesaid under the direction of the appellant, to take what is known as a chain, that is used in an engine, from a blacksmith shop of the appellant in its factory, "to where he was engaged in working upon said engine; that in doing so it was necessary for him, in the line of his

duty, to pass near where one of these shafts, or arbors, was placed upright beside one of the posts and held by one of the attachments aforesaid upright in position; that in passing near the same, without any fault or negligence whatever upon the part of the plaintiff, the said shaft, or arbor, by reason of the attachment by which it was held upright as aforesaid being defective and out of order, as hereinafter stated, without the fault or negligence of plaintiff, slipped from said attachment and fell against" him and upon his right foot with great force, by which he was greatly injured, etc., the character and effect of the injury being stated, with his expense, etc.; that said injuries were received and sustained by him as aforesaid without any fault or negligence on his part.

It was further alleged, that the appellant had a foreman in charge of the room in which the arbor, or shaft, was at the time it fell upon his foot as aforesaid, whose duty it was to see that the same was placed in a proper and safe position, and to see and know that the attachment provided for holding the same upright as aforesaid was in proper repair and condition; that "the said attachments were not in proper condition, and would not safely hold the said shaft, or arbor, upright as required, of which facts plaintiff avers the defendant and his said foreman at all times had full notice and knowledge, but that said foreman and the said defendant knowingly permitted the said attachment to be and remain out of condition and out of proper repair, negligently and carelessly, and to be and remain in a condition to not securely hold said arbor, or shaft, and to permit the same to be liable at any time to fall and injure any one passing by or near the same; that he, the plaintiff, had no notice or knowledge of the unsafe condition of said attachments as aforesaid, or of the inse-

Gaar, Scott & Co. *v.* Wilson.

cure position of said shaft as aforesaid, and was without fault in the premises;" that at the time the appellee was so injured, he was in the line of his duty and in the employ of the appellant as aforesaid, and was in a place where his duty required him to be, and that "he is now and was at all times and in all things hereinbefore stated wholly without fault or negligence." Wherefore, etc.

It is objected on behalf of the appellant that the complaint contains no charge that the appellant was guilty of negligence; that it does not show a causal connection between the appellant's negligence and the appellee's injury; and that it must be taken from the allegations of the pleading that the alleged defect in the attachment was patent, and that the injury received by the appellee was the result of a risk incident to his employment. It is averred in substance in the complaint that the appellee was injured by the falling of the arbor upon him, and that it so fell by reason of the attachment being defective and out of order as stated further on in the complaint, where it is alleged that the attachment was not in proper condition and would not safely hold the arbor upright and that the appellant had full notice and knowledge of these facts and knowingly permitted the attachment to be and remain out of condition and out of proper repair, negligently and carelessly, and to be and remain in a condition to not securely hold the arbor and to permit it to be liable at any time to fall and injure a person in the situation which was that in which the appellee was shown to have been when injured. When all the averments of the pleading are considered together, we may say that it shows negligence on the part of the appellant, and that a causal connection between the appellant's negligence and the appellee's injury sufficiently appears. We are also of

the opinion that the further objection of the appellant, that the defect was shown to be patent and that the injury was the result of the risk assumed as an incident of the service, is not well taken. The defect is not particularly described. No objection is made to the plan of the device for holding the arbor in an upright position, or to the form, material, construction or situation of the attachments, but it is alleged that when the attachments were in proper order and condition, they properly performed the purpose for which they were used. There is nothing in the complaint from which it can be said that the defectiveness of the attachment in question, whereby the arbor was not properly secured, was so obvious as to be a patent defect. It might be well known to the appellant and yet unknown to the appellee without fault on his part. On the one hand, the employer has the right to expect that the employe will be vigilant for his own protection and careful to avoid injury from ordinary or known and obvious risks, yet on the other hand the employe has a right to presume that the employer has done his duty in using reasonable care to provide safe appliances, and to inspect them at proper times, and he is not obliged to search for defects or to exercise like diligence with the employer to discover defects. When the ordinary perils of the employment are increased by the use of defective appliances known to the employer, or for which he is responsible, and unknown to the employe, such increased perils cannot be regarded as assumed risks. If the risk by which the employe was injured be one assumed, there can be no recovery though he may have exercised ordinary care. It may be that notwithstanding the fact that the injured employe exercised reasonable diligence, or even the utmost care, and was free from fault, yet the injury was one incurred from a risk assumed by him,

and therefore one for which there could be no recovery. It is in this State incumbent ordinarily upon the injured employe suing his employer for the injury to negative knowledge on the plaintiff's part of the want of safety or of the defective condition of the appliance by which he alleges his injuries were caused. *Indiana, etc., R. Co.* v. *Dailey,* 110 Ind. 75; *Atlas Engine Works* v. *Randall,* 100 Ind. 293, 50 Am. Rep. 798; *Louisville, etc., R. Co.* v. *Corps,* 124 Ind. 427; *Louisville, etc., R. Co.* v. *Sandford,* 117 Ind. 265. But it is not needed that the complaint show affirmatively that the complaining employe had no means of ascertaining the defect; it is enough to aver that he had no knowledge of the defect. *Ohio, etc., R. Co.* v. *Pearcy,* 128 Ind. 197; *Evansville, etc., R. Co.* v. *Duel,* 134 Ind. 156. While the complaint is not wholly satisfactory in form, we think it sufficient.

A motion for a new trial was overruled. It is suggested for the appellee that the record does not properly show an exception to this ruling. In the journal entry of the action of the court upon this motion there is no statement of an exception, but in the same entry it is stated that the appellant prayed an appeal to this court, which was granted, and that the appellant was given twenty days to file an appeal bond, and sixty days to file its bill of exceptions. In a bill of exceptions filed within the time granted it is stated that, on, etc., the appellant "filed its motion for a new trial of the said cause, as the same appears as a part of the record of this cause, which motion the court, after duly considering the same, overruled on the 5th day of July, 1897, during the said term of the Henry Circuit Court, to which ruling of the court the defendant at the time excepted," etc. It is provided by statute (section 638, Burns' R. S. 1894, 626, Horner's R. S.

1897), that the party objecting to the decision must except at the time the decision is made; "but time may be given to reduce the exception to writing, but not beyond the term, unless by special leave of the court," etc.; and (section 640, Burns' R. S. 1894, 628, Horner's R. S. 1897), that where the decision objected to is entered on the record, and the grounds of the objection appear in the entry, the exception "may be taken" by the party causing it to be noted at the end of the decision that he excepts; and (section 641, Burns' R. S. 1894, 629, Horner's R. S. 1897), that when the record does not otherwise show the decision or grounds of objection thereto, the party objecting "must, within such time as may be allowed, present to the judge a proper bill of exceptions," etc. To save for review on appeal the action of the court in overruling a motion for a new trial, the record must show that an exception to that action was taken at the time thereof. *Fletcher* v. *Waring*, 137 Ind. 159. It is common to show the exception in a formal entry of record showing the overruling of the motion. Such method has been constantly recognized as sufficient. But we are of the opinion that the taking of the exception at the time of the ruling may be shown, as was done in this case, by the bill of exceptions. *Pace* v. *Oppenheim*, 12 Ind. 533; *Stagg* v. *Compton*, 81 Ind. 171.

It is objected on behalf of the appellee that there are irregularities in connection with the bill of exceptions, which should prevent the consideration of matters to which it relates. It appears that the original longhand report of the evidence was filed in the clerk's office on the 13th day of July, 1897, and that the bill of exceptions incorporating said original longhand report was presented to the judge, signed by him and filed on the 19th day of August, 1897. The

bill contains, besides said report, certain separately stated exceptions to the rulings on the trial and the statement above mentioned relating to the exception to the overruling of the motion for a new trial. There are two signatures of the judge, both made on the same day, one at the end of the bill, and one following the report of the stenographer. Immediately before each signature is a formal statement, that following the stenographer's report referring to it as the original longhand manuscript of the evidence, and being in such form as to be a sufficient ending of a bill of exceptions containing the evidence, and the other relating to the whole bill. While it is plainly shown that the portion containing the evidence is the original longhand manuscript, it is not stated anywhere that the bill of exceptions is the original bill, and the clerk at the end of the transcript certifies that "the above and foregoing transcript contains full, true and complete copies of all papers and entries in said cause, and that on," etc., the official reporter, who took down the evidence in said cause, "filed in my office his longhand manuscript thereof, which is the same manuscript of the evidence incorporated in the bill of exceptions made a part of the foregoing transcript." Though both of said signatures of the judge and certain dates are in manuscript, while the remainder of the bill is in typewriting, we think we cannot reject the bill as being an original bill containing more than may be presented to us by an original bill. *City of Huntington* v. *Griffith*, 142 Ind. 280, 287; *Wantland* v. *State*, 145 Ind. 38. If it may properly be said that the bill cannot be regarded as showing that the stenographer was selected or agreed upon by the parties or that he was sworn to report this case, it cannot be said that the bill shows anything to the contrary, and such failure cannot exclude from us the

Gaar, Scott & Co. *v.* Wilson.

evidence authenticated by the statement signed by the judge that it was all the evidence given in the cause. *Williams* v. *Pendleton, etc., Co.*, 76 Ind. 87; *Stagg* v. *Compton, supra; McCoy* v. *Able*, 131 Ind. 417.

It appeared in evidence that the appellee was injured in a room used for building and setting up engines; that this room was longer from east to west than from north to south; that there were in it two rows of iron columns extending from east to west and supporting the upper floor, there being five or six columns in each row. The engines were built up in stalls or spaces, called "floors," on the south side of the apartment, the space between the eastern column and the east end of the apartment being called floor No. 1, that between the first two columns from the east being called floor No. 2, and so on, the space between each two columns being a floor. The arbors, or mandrels, when not in use were set upright beside these columns. At some of the columns there was but one mandrel, at others there were two, at some there were more than two. They were secured at the bottom by an iron ring on the floor and near the top by the attachment mentioned in the complaint, which was fastened to the pillar. The attachments were iron bands bent around the pillar and fastened to it by iron screws, and so extended and formed as to constitute spring clamps for receiving and holding the mandrels. The mandrels were placed within these clamps and taken from them by forcing the round shafts through the lips of the spring clamps.

The appellee was working in the stall or floor numbered four. In the course of his employment he went out of a door at the east end of the apartment and returned the same way. On his return, as he passed the first pillar on his left, the one furthest east, a mandrel at the north side of this pillar fell upon his

right foot and caused the injury complained of. The attachment on this pillar was adapted for receiving two mandrels, one on the north side and the other on the south side. There were two pieces of iron bent around the pillar and extended on the north and south sides and there bent out forming a clasp on each side of the pillar, the ends being left open so that the mandrels could be slipped into the clamps and held there. They were alike in that construction on the north and south sides of this pillar. An employe named Charles Williams, whose duty it was to pick up things when out of place and to put them in their proper places, saw the mandrel lying on the floor in the gangway and picked it up, put one end in the socket on the floor and tossed the mandrel back, intending to put it in the clasp, and thinking that he did so. He was in a hurry, walking rapidly from the door at the east end of the room to answer the telephone at the west end. Having so replaced the mandrel, he, without stopping to examine whether it had been caught in the clamp or not, went on, and about a minute and a half, as he estimated, from the time of so replacing the mandrel, and between the time of his leaving the pillar and getting to the telephone, or while he was answering the telephone, the accident happened. He testified that he could not say whether he put the mandrel in carefully or not, or say positively whether it went further than the lips of the attachment or not. There was no direct evidence that the clamp on the north side of the east pillar was in a defective condition, no witness had observed any defect in it, and there was no evidence that a mandrel had ever fallen from it before, or had been knocked down. One Charles A. Wood, who had worked at the place about five years, was permitted, over appellant's objection, to testify that he had no-

ticed the mandrel on the south side of this pillar fall out; and that it had fallen out two or three times that he knew of. This witness having also testified that each piece of iron forming the clamps on this pillar was screwed to the pillar by two bolts, one on the north side and one on the south side, that the two bolts on the north side gave the tension and strength to the spring on that side, that these two clamps were alike in general shape, and that there was a crack on the south side of one of the pieces of iron forming these clamps; that this crack would not weaken the clamp on the north side; thereupon the appellant moved to strike out the testimony of this witness on the subject of the mandrel on the south side of the post having fallen out on two or three different occasions from its attachment; but the motion was overruled. Another witness, one August Uhde, who had worked at the establishment many years, was permitted, over the appellant's objection, to testify that before the accident to appellee the witness had seen mandrels fall down; that there was not room for the engines to pass, and when the wheels struck them they would fall; that they did not fall of their own weight; that in running an engine around one of the posts, it would leave the clasps open so that they would have to be driven back, which he had seen done. This testimony related to other pillars than that from which the mandrel fell upon the appellee.

Evidence should have a legitimate bearing upon the question in issue. Here there was, as before observed, no complaint relating to the adaptation of the device to the purpose for which it was used as to its plan, or material of which it was made, or to the manner of its construction or attachment to the pillar. The complaint was that it was negligently permitted to become out of order. The evidence so

admitted over objection does not appear to have been limited by court or counsel to any restricted purpose. Under the complaint it devolved upon the appellee to prove that the particular attachment from which the arbor fell and injured him was negligently permitted to be defective and out of order and that the arbor fell by reason of this negligently permitted condition of this particular attachment.

· It is said in the brief of the learned counsel for the appellee: "It was incumbent upon the plaintiff in this case to prove that the device was out of order, and that it had become out of order through the negligence of the defendant, so that the defendant knew its condition, or could have known it by a reasonable inspection of the same. It is averred in the complaint, and not controverted in the evidence, that the device, when in proper order, is efficient for the purpose for which it was intended. * * * It was competent to show the workings and efficiency of this device by the operation of it and like ones in the same room and in the exact situation in which it was situated."

There was no evidence that the other mandrels of whose falling the witnesses were permitted to testify fell because of the fact that the clamps which held them (being originally sufficient) had been permitted to become out of order so that the mandrels fell from them by reason of defectiveness occasioned from a cause which had produced defectiveness in the clamp on the north side of the east pillar. On the contrary, there was evidence of particular reasons for the falling of the other mandrels which did not apply to the attachment on the north side of the east pillar. The conditions were not shown to be essentially the same.

It is a common thing to prove the condition of machinery or appliances at the time of the occurrence involved in the litigation by facts showing the like

condition of the same machinery or appliances at another time when the circumstances shown are such as to raise a fair inference that no change has taken place. *McCulloch* v. *Dobson*, 133 N. Y. 114, 30 N. E. 641.

Evidence that on occasions before that in litiga· tion, the conditions being substantially the same, the appliance by which the plaintiff was injured failed in like manner to operate properly, was held competent for the purpose of proving the defective character of the appliance, and that the employer knew or ought to have known thereof, in *Brewing Co.* v. *Bauer*, 50 Ohio St. 560, 35 N. E. 55. Proof of similar accidents at the same switch under the same conditions was held competent in *Clapp* v. *Minneapolis, etc., R. Co.*, 36 Minn. 6, 29 N. W. 340. See, also, *Dye* v. *Delaware, etc., R. Co.*, 130 N. Y. 671, 29 N. E. 320. Evidence that the appliance by which the employe was injured had failed in like manner to work properly on former occasions of which the employer was charged with knowledge is admissible. *Myers* v. *Hudson Iron Co.*, 150 Mass. 125, 22 N. E. 631. In such case the defendant may prove, if it can, that the former failure occurred from some other cause than a defect in the appliance. *Myers* v. *Hudson Iron Co., supra*. In *Cleveland, etc., R. Co.* v. *Wynant*, 114 Ind. 525, it was said: Where it becomes necessary to affect those charged with the duty of keeping highways, bridges, or other structures in a safe condition, or of keeping only competent persons in their service, with notice of defects or unfitness, or where the question is as to the safety or availability of a machine or contrivance designed for a particular purpose or for practical use, evidence is admissible to show how the thing served when put to the use for which it was designed, in the one case, or that occurrences of a character to

Gaar, Scott & Co. v. Wilson.

make the defect or incompetency notorious had taken place, in the other. * * * Evidence of other similar occurrences, on other occasions, is not admissible for the purpose of raising a presumption that the particular accident in question happened, or that the place was defective and dangerous, or that the situation was of such a character that the occurrence resulting in the injury complained of might well have taken place."

The general rule is that evidence of other or similar defects is incompetent. The exceptions to the rule are, it has been held, in cases where the other defects are shown to be the result of a cause presumptively operating at the place of the injury or where such other defects might have caused the one which produced the injury. *Morse* v. *Minneapolis, etc., R. Co.,* 30 Minn. 465, 16 N. W. 358; *Grand Rapids, etc.,* R. *Co.* v. *Huntley,* 38 Mich. 537; *Louisville, etc., R. Co.* v. *Fox,* 11 Bush. 495; *Western Union Tel. Co.* v. *Levi,* 47 Ind. 552; *Ramsey* v. *Rushville, etc., Co.,* 81 Ind. 394. We cannot determine that this evidence was deprived of improper effect by the fact that the falling of the other mandrels appeared by the evidence to have been occasioned by causes not shown to have affected the attachment whose defectiveness was charged in the complaint. The judgment is reversed, and the cause is remanded for a new trial.

Comstock, J., took no part in this decision.