## BAKER *v.* HANCOCK.

[No. 4,054. Filed March 19, 1902. Rehearing denied May 23, 1902. Transfer denied June 25, 1902.]

PHYSICIAN.—*Malpractice.*—*Pleading.*—A recital in a complaint in an action for malpractice that plaintiff's injury was caused by the carelessness, negligence, and lack of skill and knowledge of defendant does not amount to an averment of incapacity on the part of defendant when considered in connection with a preceding averment that defendant did not exercise that degree of skill required of his profession. *p. 458.*

SAME.—*Malpractice.*—*Evidence.*—*Treatment of Other Patients.*—In an action for malpractice in the treatment of plaintiff for a cancer

of the nose, evidence that defendant pronounced certain ailments of witnesses to be cancer, and sought to treat, and in one case did treat them for such disease, and the sores so diagnosed as cancers got well by the application of simple remedies was properly excluded; since there was no connection between the offered proof and the diagnosis and treatment of plaintiff. *p.459.*

PHYSICIAN.—*Malpractice.*—*Evidence.*—*Treatment of Other Patients.*— Evidence in the trial of an action for malpractice in the treatment of plaintiff for cancer that defendant had successfully treated other patients for cancer is inadmissible. *pp. 459, 460.*

SAME.—*Degree of Skill Required.*—As a measure of duty to his patients a physician is bound to possess and exercise the average degree of skill possessed and exercised by members of the profession practicing in similar localities, having regard to the advanced state of the profession at the time of treatment. *pp. 460, 461.*

SAME.—*Specialist.*—*Degree of Skill Required.*—A physician who holds himself out as a specialist in the treatment of a certain disease is bound to bring to the discharge of his duty to patients employing him as such specialist that degree of skill and knowledge which is ordinarily possessed by physicians who devote special attention and study to the disease, its diagnosis and treatment, having regard to the present state of scientific knowledge. *p. 461.*

From Washington Circuit Court; *D. M. Alspaugh,* Judge.

Action by Henry W. Baker against George S. Hancock for malpractice. From a judgment for defendant, plaintiff appeals. *Reversed.*

*A. Elliott* and *M. B. Hottel,* for appellant.
*J. C. Lawler* and *F. M. Hostetter,* for appellee.

ROBY, J.—The complaint was in four paragraphs. In the amended first paragraph it was averred that the appellee was, in March, 1897, engaged in the practice of medicine and surgery at Campbellsburg, Washington county, Indiana; that appellant was suffering from an ailment of the nose which he supposed to be nasal catarrh, and went to appellee for treatment; that appellee negligently examined appellant's nose and told him that he had cancer of the nose and advised him to have it treated at once, to which appellant consented; that appellee proceeded to treat

the same, and negligently applied some local application to the plaintiff's nose, by and on account of which the end of his nose was eaten off; that he in truth never had cancer of the nose at all, and that his disfigured condition is the direct result of appellee's negligence and want of skill, on account of which he was damaged, etc., without fault on his part. The second paragraph of complaint differs from the amended first paragraph, in that it is therein averred that appellee held himself out to the public, by advertisement and otherwise, as a specialist in the treatment of cancer, and made the application to appellant's nose for the treatment of cancer. The third paragraph differs from the amended first paragraph only in averring that the local application referred to was for the treatment of cancer, and the fourth paragraph corresponds in substance with the second.

The issue was formed by a denial. Appellant bases his claim in each paragraph upon the loss of part of his nose, which he says was caused by the negligent use of a local application by the appellee. It is tacitly admitted in the complaint, and expressly conceded in appellant's brief, that if the diagnosis of cancer was correct the charge of negligence in making the application, and the result thereof, fails. The question of liability therefore is restricted to very narrow limits. To make it out the appellant produced evidence tending to show that he had no cancer; while the defense is based upon the testimony of appellee and others to show that he did have cancer of the nose.

No charge of unskilfulness or lack of education is made in the complaint. It proceeds upon the hypothesis that the appellee did not exercise that degree of skill required in his profession. There is a recital in two of the paragraphs to the effect that appellant's injury was caused by the carelessness, negligence, and lack of skill and knowledge of the appellee. Such recital is not equivalent to, and does not amount to, an averment of incapacity. It has relation to

the preceding averments. Whether or not appellee negligently failed to diagnose the disease, and so failing negligently made a local application, because of which appellant's nose was eaten off, is the main fact upon which liability was made to depend. Evidence relevant to that fact was admissible. Evidence not relevant thereto was not admissible, either as tending to show liability, or to exonerate therefrom.

The appellant offered four witnesses, in the first instance, by whom he undertook to prove that appellee had pronounced certain ailments of such witnesses to be cancer, and sought to treat, and in one case did treat for such disease. That the sores, so diagnosed as cancers, got well by the application of simple remedies. Objections were sustained by the court to the proof of such facts. These rulings were correct. "Facts relevant to the issue are facts from the existence of which inferences as to the existence of the facts in issue may be drawn." "Four classes of facts, which in common life would usually be regarded as falling within this definition of relevancy, are excluded from it by the law of evidence, except in certain cases: (1) Facts similar to, but not specifically connected with, each other." 1 Rice. Ev., 490; Stephen's Dig. of Ev., Art 1; Reynolds' Stephen Ev., Art. 10. There was no connection between the offered proof and the diagnosis and treatment given appellant. It was therefore collateral and inadmissible. Appellee was allowed to testify, over objection, that during the past seven years he had treated forty-five or fifty cases of cancer with the same remedy applied to appellant; that he had succeeded in his treatment of all but ten per cent. of them, and that such patients were old persons whom he did not expect to cure.

A witness introduced by appellee testified that he was a physician and surgeon; that he had occasion to examine a person named, and pronounced and believed her affection to be cancer; that appellee treated her in his presence, and

that she recovered and remained well. Another doctor was allowed to state that he had examined the lip of another patient treated by appellee; that he diagnosed the affection as cancer, and that after the treatment by appellee the lip assumed its normal condition. Much other evidence was introduced of the same character, relating to the appellee's treatment of various other persons, and entirely disconnected from the treatment of appellant. It can make no difference as regards the admissibility of such evidence whether the result was good or bad. It is inadmissible in either event. The principle is illustrated by many cases. *Evans* v. *Koons,* 10 Ind. App. 603; *Cleveland, etc., R. Co.* v. *Wynant,* 114 Ind. 525, 529, 5 Am. St. 644; *Gaar, Scott & Co.* v. *Wilson,* 21 Ind. App. 91; *Nave* v. *Flack,* 90 Ind. 205, 46 Am. Rep. 205; *Holtzman* v. *Hay,* 118 Ill. 534, 59 Am. Rep. 390; *Thompson* v. *Bowie,* 4 Wall. 463, 18 L. Ed. 423; Gillett Ind. and Collat. Ev., §§55, 56; *Lacy* v. *County of Kossuth,* 106 Iowa 16, 75 N. W. 689, 692; *Van Sickle* v. *Shenk,* 150 Ind. 413.

A further question is as to the measure of appellee's duty toward his patient. The measure of the duty of a general practitioner is that he does not undertake absolutely to cure, but is bound to possess and exercise the average degree of skill possessed and exercised by members of the profession practicing in similar localities *(Gramm* v. *Boener,* 56 Ind. 497, 501; *Smith* v. *Stump,* 12 Ind. App. 359; *Whitesell* v. *Hill,* 101 Iowa 629, 70 N. W. 750, 37 L. R. A. 830, and note; *Becknell* v. *Hosier,* 10 Ind. App. 5; *Jones* v. *Angell,* 95 Ind. 376; *Kelsey* v. *Hay,* 84 Ind. 189), and having regard to the advanced state of the profession at the time of treatment *(Nelson* v. *Harrington,* 72 Wis. 591, 40 N. W. 228, 1 L. R. A. 719, 7 Am. St. 900; *Small* v. *Howard,* 128 Mass. 131, 35 Am. Rep. 363; *Almond* v. *Nugent,* 34 Iowa 300, 11 Am. Rep. 147; *Smothers* v. *Hanks,* 34 Iowa 286, 11 Am. Rep. 141; *Gates* v. *Fleischer,* 67 Wis. 504, 30 N. W. 674; *McCandless* v. *McWha,* 22

Pa. St. 261; *Tefft* v. *Wilcox,* 6 Kan. 46, 62; *Hitchcock* v. *Burgett,* 38 Mich. 501).

It is averred in two paragraphs of the complaint that the appellee "was making a specialty of the treatment of cancer, and held himself out to the public as a specialist in the treatment of said disease of cancer by advertising in the public press, and by other public notices thereof."  A specialist, as the term is here used, is understood to mean a physician or surgeon who applies himself to the study and practice of some particular branch of his profession.  Scientific investigation and research have been extended and prosecuted so persistently and learnedly that the person affected by many forms of disease is of necessity compelled to seek the aid of a specialist in order to secure the results thereof.  The local doctor in many instances, himself suggests and selects the specialist whose learning and industry have given him a knowledge in the particular line which the general practitioner, in rural communities especially, has neither time nor opportunity to acquire.  *Small* v. *Howard,* 128 Mass. 131.  Being employed because of his peculiar learning and skill in the specialty practiced by him, it follows that his duty to the patient can not be measured by the average skill of general practitioners.  If he possessed no greater skill in the line of his specialty than the average physician, there would be no reason for his employment; possessing such additional skill, it becomes his duty to give his patient the benefit of it.  The appellee, if he held himself out as a specialist in the treatment of cancer, was bound to bring to the discharge of his duty to patients employing him, as such specialist, that degree of skill and knowledge which is ordinarily possessed by physicians who devote special attention and study to the disease, its diagnosis, and treatment, having regard to the present state of scientific knowledge.  *Feeney* v. *Spalding,* 89 Me. 111, 35 Atl. 1027; *McMurdock* v. *Kimberlin,* 23 Mo. App. 523.  This is the degree of skill which by holding himself out as a specialist,

he represented himself to have; and it does not lie with him to assert after securing employment and compensation on that basis that his representation was not true.

The instructions given by the court upon this subject did not correctly express the law. The judgment is reversed, and cause remanded with instructions to sustain motion for a new trial and further proceedings consistent herewith.

Comstock, C. J., Black and Henley, JJ., concur. Robinson and Wiley, JJ., dissent.


## On Petition for Rehearing.

Roby, J.—After stating that "A physician is a physician whenever he acquires sufficient learning to be entrusted by the proper legal authorities with a legal license to practice medicine and it is actually practiced," the appellee's attorneys in their brief upon this petition, inquire, "When is a specialist a specialist?" The question is not one of law; it is a question of fact. The appellee may or may not have qualified himself as a specialist. Whether he had done so was a matter within his own knowledge, and primarily for his own determination. Having arrived at the conclusion that he possessed such qualification, it still remained optional with him as to whether he would hold himself out and receive and treat patients upon the basis of it. When he determines to do this and does it, it then becomes his duty to exercise that degree of skill which he thereby represented himself as possessing. To relieve one practicing medicine under such circumstances of responsibilities commensurate with the pretension by which patients are secured and compensation fixed, would be to give ignorant practitioners license to defraud and to place innocent patients at their mercy.

The definition of the noun specialist, as given in the Standard Dictionary, was followed in the opinion. It is

said in that work to mean "more especially, a physician or surgeon who applies himself to the study and practise of some particular branch of his profession." The thing on account of which appellant sought to recover damages was the alleged negligent destruction of part of his nose. Two paragraphs of the complaint proceed upon the theory that appellee held himself out as a specialist. If, so holding himself out, he undertook to diagnose and treat appellant's case as coming within the specialty so practiced by him, he was bound to use that degree of skill which such a practitioner of necessity should possess. It became his duty to give every patient, to whom he undertook in that capacity to render service, the benefit of that reasonable skill exacted by the law from one thus engaged.

It is argued further that in holding testimony as to the treatment of other patients incompetent, this court omitted to consider the "connecting link or sameness." In this, counsel are mistaken. The only sameness between the cases alleged to have been cured and that of appellant, so far as shown, was the remedy used by appellee.

Petition overruled.

Robinson and Wiley, JJ., dissent, and hold that the petition should be granted.