### RAGAN v. SHANNON et ux.

No. 14648—Opinion Filed April 15, 1924.

**1. Judges—Status of District Judge Assigned to Other District.**

A regularly elected district judge while holding a term of court in a county outside of his district, under an assignment by the Chief Justice, exercises the jurisdiction of the court in such county and is not acting in the capacity of a judge pro tempore.

**2. Same—Delayed Action on Motion for New Trial—Extension of Time for Case-Made.**

Where such judge takes under advisement a motion for new trial, and does not rule on it during such term he is authorized while holding another term in the same county under a subsequent assignment, to rule on such motion for new trial and to extend the time for making and serving case-made.

**3. Appeal and Error—Case-Made—Time for Service.**

Where time for making and serving case-made is extended 90 days in addition to the time allowed by law, the case-made may be served any time within 105 days from the ruling on the motion for new trial.

**4. Same—Validity of Case-Made—Evidence.**

It is not necessary to the validity or completeness of a case-made that a transcript of the reporter's notes of the testimony of the witnesses be included, but where the trial judge, upon due notice, after considering the case-made containing the testimony of the witnesses in narrative form, certified to by the attorney presenting the same as containing all the evidence in the case, together with amendments suggested thereto by the opposing party, corrects, signs, settles, and certifies the same as a case-made and orders it filed with the clerk, and the same is brought here by appeal, it will, in the absence of some showing to the contrary, be deemed to be a true and correct case-made unless it shows on its face affirmatively that the judge's certificate is in some material respect incorrect.

**5. Physicians and Surgeons—Action for Unskillful Treatment—Evidence.**

In an action for damages for injuries suffered in a treatment for cancer by one not licensed to practice medicine in the state, the results of the treatments by the defendant of other similar cases are not relevant to the issues and it is error to admit in evidence proof of the results of such treatments.

**6. Trial—Instructions—Covering Issues.**

In a case tried to a jury, where the evidence tends to support the same, it is the duty of the court to submit by appropriate instructions the theory of the plaintiff; and failure so to do at the request of the plaintiff constitutes prejudicial error.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Pittsburg County; A. C. Brewster, Assigned Judge.

Action by Bessie Ragan by her next friend, Emma Ragan, against James Shannon and Mrs. James Shannon. Judgment for defendants, and plaintiff appeals. Reversed, with directions to grant plaintiff a new trial.

J. S. Arnote, for plaintiff in error.

Wilkinson & Hudson, for defendants in error.

Opinion by RAY, C. At the outset we are confronted with the contention of the defendants in error that the case is not properly in this court upon the following grounds: (1) That the court was without jurisdiction to rule upon the plaintiff's motion for a new trial or to extend the time for making and serving the case-made beyond the 15 days fixed by statute; (2) that the first extension of time for making and serving the case-made had expired before the second extension was granted; (3) that the case-made does not contain a true and correct transcript of the testimony.

These contentions are based upon the following facts: The case was tried November 4, 1921, before Judge A. C. Brewster, who had been assigned to hold a two weeks term of court in Pittsburg county. At that time

Judge Brewster took plaintiff's motion for a new trial under advisement until the 2nd day of March, 1923, when he had again been assigned to hold a three weeks term of court in Pittsburg county, at which time he overruled plaintiff's motion for a new trial and granted an extension of 90 days in addition to the time allowed by law in which to prepare and serve case-made; and thereafter, upon notice, signed and settled the case-made in which the testimony of the witness was set out in narrative form.

1. The contention is made that when the time expired for which Judge Brewster was assigned to hold court under the assignment of November 20, 1921, he lost jurisdiction of the case, and that his second assignment to hold a term of court in that county did not confer upon him jurisdiction to rule upon the motion for a new trial or to extend the time for making and serving a case-made; that when he failed to rule upon the motion for a new trial during the period of his first assignment he lost all jurisdiction of the case.

The only authorities cited to sustain this contention are decisions of this court where it has been held that a judge pro tempore has no authority or power to extend the time for making and serving a case-made after he has ceased to sit as a court. City of Shawnee v. Farrell, 22 Okla. 652, 98 Pac. 942; Harner v. Goltry & Son, 23 Okla. 905, 101 Pac. 1111; Casner v. Wooley, 28 Okla. 424, 114 Pac. 700; Murphy v. Favors, 31 Okla. 162, 120 Pac. 641; City of Shawnee v. State Pub. Co. et al., 33 Okla. 363, 125 Pac. 462; Cantwell v. Patterson, 40 Okla. 497, 139 Pac. 517; Bradley v. Farmers' State Bank, 45 Okla. 763, 147 Pac. 302; McLean v. McLean et al., 45 Okla. 765, 147 Pac. 302; McGuire v. McGuire, 78 Okla. 164, 193 Pac. 973; Southwestern Electric Co. v. Nunn Electric Co., 80 Okla. 6, 193 Pac. 973. These cases hold that such extensions can only be granted by the regular district judge who is in fact in possession of the office.

We think there is a clear distinction between the power of a judge pro tempore and that of one of the regular district judges of this state assigned by the Chief Justice under section 9, article 7, of the Constitution to hold a term of court in a county in another district. That distinction has generally been recognized by the bar and bench. A district judge of one district assigned to hold a term of court in a county outside of his district has generally been recognized as having the power and jurisdiction of a judge of that district. That, in effect, was the holding of this court in Curlee et al. v. Ruland, 47 Okla. 519, 149 Pac. 1149, where it was said:

"The rule that, where a judge pro tempore makes an order allowing an extension of time to make and serve case-made, and for suggestion of amendments thereto, his term of office ceases upon the expiration of the time fixed for suggesting amendments, does not apply where one of the regularly elected district judges of the state is assigned to hold court in another district under the provisions of section 194, Williams' Annotated Constitution."

No authority in point is cited, and we can see no reason why the judge who tried the case on being reassigned to hold a term in that county where the motion for a new trial was still pending was not authorized to rule upon that motion. Being regularly assigned to hold a term of court in that county he was exercising the jurisdiction of the court with full power to hear and determine any and all matters pending in that court. In all the cases cited touching upon the question it has been held that the judge exercising jurisdiction is authorized to extend the time for making and serving case-made, and, in the instant case, Judge Brewster was exercising the jurisdiction of the district court of Pittsburg county.

2. At the time the motion for a new trial was overruled the plaintiff was allowed 90 days, in addition to the time allowed by law, in which to prepare and serve case-made. It is contended that the 90 days began to run at the time the order was made and not at the end of the 15 days allowed by the statute for making and serving case-made. This contention is without merit. The order expressly extended the time 90 days "in addition to the time allowed by law." The statute provides 15 days for making and serving case-made, and when the order extended the time 90 days in addition to that allowed by law it was, in effect, an extension of 105 days.

3. This suit was brought by an eight year old girl by her mother as next friend. Affidavits were presented to the trial court that the plaintiff and her mother were both without means and unable to pay for a transcript of the testimony. Plaintiff's attorney presented and served upon opposing counsel a case-made in which the testimony of the witnesses was set out in narrative form. The defendant suggested certain amendments and objected to the judge signing and settling the case upon the ground that it did not contain a transcript of the stenographic notes and did not contain all of the testimony taken at the trial. The certificate of the judge shows that amendments suggested by the defendant were considered

and case-made corrected, signed, and certified as a true and correct case-made. In the case of State ex rel. Wigal v. Wilson, 43 Okla. 112, 141 Pac. 426, the trial court was required by mandamus to sign and settle the case-made where it was shown that the relators were paupers and unable to pay for a transcript of the testimony and had presented to the court a case-made containing the evidence in narrative form. The court in that case, after quoting the statutes, said:

"It will thus be seen that the Legislature has provided every means and safeguard to protect the rights of litigants in their efforts to have their cases reviewed by this court. Where a party litigant is not in fault, there should be no excuse for his failure to get his case before the Supreme Court by reason of property or other condition over which he has no control. * * *

"The statute nowhere provides that in preparing a case-made the evidence shall be transcribed and included in haec verba or in detail, as required by respondent. As suggested in some of the cases quoted from herein, if the trial court, as a matter of fact, could not remember the testimony in detail, it was his duty to call to his assistance the official reporter and ascertain whether or not the case-made was correct. We are also of the opinion that, when a case-made is served upon opposing counsel, he should be required to go further than simply object to the case-made as presented, on the ground that it does not correctly contain the evidence or other proceedings of the court. It is his duty, not only to the opposing counsel, but as an attorney and officer of the court, in order to facilitate the dispatch of business of the court, to point out in what particulars the case-made is defective. In the case at bar, where counsel have attempted to make a statement of the evidence of certain witnesses, although in a narrative form, and assert the same to be substantially correct, and opposing counsel contend that the statements do not contain correctly the evidence of said witnesses, it should be pointed out in detail in what respect it is lacking, and, when it may be reasonably done, he should furnish a correct copy of the testimony or other portion of the record which he claims has been omitted, in order that the court may be advised in the particulars in which it is contended the case-made is defective, to the end that said case-made may be amended to meet the requirements of the law and the ends of justice."

This case was cited with approval in Cherry v. Brown, 79 Okla. 215, 192 Pac. 227, and State ex rel. v. Sullivan, 80 Okla. 81, 194 Pac. 446. Following and approving Wigal v. Wilson, supra, we think it was incumbent upon the defendants to submit such suggestions of amendment to the trial judge as in their judgment necessary to make the case-made speak the truth. The showing made that the plaintiff was without means and unable to pay for a transcript of the testimony was sufficient to authorize counsel to prepare the testimony in narrative form and serve it on the opposing parties and present it to the judge as a correct statement of the testimony and to authorize the judge, after considering the amendments suggested by defendants and correcting the same to conform to the truth, to sign and settle the same as a case-made.

This case must be reversed upon two grounds: First, because of the admission of evidence of similar transactions not related to the issues involved, and, second, because the issues were not fairly submitted to the jury. The suit is by an 8 year old girl, by her next friend, for injuries suffered in the treatment of what was supposed to be a cancer on the lower eyelid. It was alleged in the petition that the defendants were not physicians licensed to practice medicine in this state, but held themselves out to be expert in the treatment of cancers, and represented to the plaintiff and her mother that the discoloration or infection on the lid of the plaintiff's eye was a cancer and that they could remove and cure the cancer without in any way injuring the eye or eyelid, and that her mother employed them for that purpose and paid them $15 for the treatment, the amount charged; that they wrongfully and unlawfully undertook the treatment, and applied stringent and caustic medicines and compounds to the eyelid, and so unskilfully, negligently, and unprofessionally treated the same, and so carelessly and negligently failed to give proper attention to the treatment applied, that the eyelid was severely burned, scarred, and drawn out of its natural shape; that it was continually painful and permanently injured her eyesight and her physical appearance and destroyed to a great extent the usefulness of the eyelid.

The defendants answered, first, by a general denial, and, second, alleged that one of the defendants was skilled in the treatment of cancers and had a medicine that would cure; that the plaintiff had a cancer on her eyelid, and that he treated it skillfully with the proper medicine and effected a cure; that he had instructed the plaintiff and her mother to keep the wound protected, but that contrary to his instructions they had permitted the wound to go unprotected and exposed to the cold, dust and germs which greatly hindered the healing process; and that the injury if any was caused by the negligence of the plaintiff and her mother in failing to carry out his instructions and

not caused by the treatment, and denied that any charge was made for the treatment. The plaintiff replied by general denial. These pleadings put in issue the qualifications of defendants and their right to practice medicine, the unskilful and unprofessional treatment, negligence in the treatment, the harmful effects of the medicine used, and the charge for the treatment. Plaintiff's evidence was directed to the character of the malady or appearance of the eyelid before and after treatment, and the resultant injury to the eye and eyelid, and to showing that the defendants were not physicians, and never had been authorized to practice medicine. The defendant James Shannon, who assumed all responsibility for the treatment, denied making any charge, but admitted accepting $15 as a gift. He said there was an angry red spot on the eyelid about the size of a nickle which he thought was a rose cancer; that the preparation used was sulphate of zinc and a weed found growing in the woods; that the treatment was successful; that he had treated cancer for a great many years with uniform success; that if any injury resulted it was from the negligence of the plaintiff and her mother in permitting the eye to go unbandaged, contrary to his instructions. On cross-examination he admitted that he had no medical education, and that neither of the defendants were licensed to practice medicine; that he had never studied physiology, anatomy, chemistry, or any branch of medicine, except that he had read about cancers in some "doctor books" which had been left with him. With this state of the record, the defendant was permitted, over the objection of plaintiffs, to introduce seven witnesses from 36 to 80 years old, who each testified that he at one time had a cancer and the defendant, James Shannon, cured it. This was manifestly error and prejudicial to the plaintiff's interests. This testimony was not relevant to the issues, but wholly disconnected therefrom. There was no connection between this evidence and the diagnosis and treatment of the red spot on plaintiff's eyelid. This class of evidence should have been excluded for two reasons; first, the plaintiff could not be expected to be prepared to meet it, and second, because it introduced new issues and had a tendency to confuse the issues being submitted to the jury. Encyclopedia of Evidence, vol. 11, 772. The jury might easily have believed that each of these witnesses had been cured of cancer by the defendant and, from that, reached the conclusion that the defendant was competent to make a proper diagnosis, and had administered a proper treatment in this case, while if those issues had been tried out it might have been made to appear that neither of the witnesses ever had a cancer. All these witnesses were non-experts

Their evidence was purely opinionative. Such evidence was held inadmissible in the following cases: Baker v. Hancock, 29 Ind. App. 456; Holtzman v. Hay, 118 Ill. 534; Lacy v. County of Kossuth, 106 Iowa, 16, 75 N. W. 689.

The issues were not fairly submitted to the jury by the instructions. While negligence was alleged in the petition the gravamen of the charge was the unlawful treatment and want of knowledge and skill on the part of the defendants, and all of the evidence was directed to that issue. The allegation of negligence was but incidental. The instructions apparently were given upon the theory that the cause of action rested upon negligence. By instruction No. 2 the jury were told that it must be shown by a preponderance of the evidence that the injury was the result of negligence on the part of the defendants. By instruction No. 7 they were told that they could not find the issues against the defendants solely for the reason that they were not licensed physicians, but they must further find from the evidence that the treatment was carelessly and negligently done. By instruction number 4 they were told, in effect, that if they found that the plaintiff had a cancer and that the defendants treated it in a skilful manner so as to effect a cure and so administered the treatment as not to permanently injure the plaintiff, and the condition of the eye and lid was the direct result of such treatment they should find for the defendant. While by instruction number 5 they were instructed that if they found that the plaintiff did not have a cancer, and they further found that by the treatment she was injured, they should find for the plaintiff, and in number 6 they were told that they should determine from all the evidence whether plaintiff had a cancer and, if she did, then to determine whether they used proper skill in effecting a cure and to prevent injury to the lid and to the eye, and by instruction number 8 that if they found that she had a cancer and the defendants in this treatment applied a proper remedy, but too strong, and plaintiff was injured thereby, then the defendant would be liable, but nowhere was there submitted to the jury any theory upon which they could return a verdict for the plaintiff for injuries suffered by reason of the unskilful treatment unlawfully administered.

"In a case tried to a jury, where the evidence tends to support the same, it is the duty of the court to submit by appro-

priate instructions the theory of the plaintiff; and failure so to do, at the request of the plaintiff, constitutes prejudicial error."

A., T. & S. F. Ry. Co. v. Jamison 46 Okla. 609, 149 Pac. 195; Eccleston v. Edens, 50 Okla. 237, 150 Pac. 882; Ingraham v. Byers, 50 Okla. 463, 150 Pac. 905; Spurrier Lumber Co. v. Dodson, 30 Okla. 412, 120 Pac. 934; Leach v. Helper, 32 Okla. 729, 124 Pac. 68; Montcastle v. Miller, 66 Okla. 40, 166 Pac. 1057.

The judgment should be reversed, with directions to grant the plaintiff a new trial.

By the Court: It is so ordered.